PeahsoN, J.
 

 1. The plaintiff'alleges, that by his purchase at the sale, made under execution, by the sheriff of North
 
 *132
 
 ampton county, in January, 1848, he became entitled to the equity of redemption in all tlie bridge, except that part lying in the county of Halifax, the equity of redemption in which part, he admits, belongs to the defendants, the Seaboard and Roanoke rail-road company; and ho insists, that the 'excess of the proceeds of the sale, made by tlie defendant Dudley, in August, 1851, after deducting tlie amount secured by tlie deed of trust, should bo divided between tlie defendants, the Seaboard and Roanoke rail-road company, and himself, in the proportion of their i espective interests in the equity of redemption, that is, in the proportion of tlie value of the part lying in the county of Halifax, to the value of the part tying in the county of Northampton.
 

 The defendants, the Seaboard and Roanoke rail-road company, oppose this claim, by denying that the plaintiff acquired the equity of redemption in that part of the bridge lying in tlie county of North amp ton, by his purchase at execution sale; for, as they insist, the Portsmouth and Roanoke company, the maker of the deed of trust to Dudley, owned but a
 
 11
 
 term of years” in tlie bridge, and the equity of redemption therein was not liable to execution sale.
 

 We are of opinion that the estate of the Portsmouth and Roanoke company in the bridge, was not a “ term of years,” but a fee simple, and consequently, the equity of redemption was subject to sale under execution. The company was au-thorised, by its charter, to purchase land or have it condemn' ed for the purposes of the road, and there is an express provi si on that the land, so acquired, should he held and owned by the company in fee simple ; so that although the existence of the company was limited to sixty years, yet the land, acquired by it, was owned in feo, and the company could transfer an estate in fee therein.
 

 By the amended charter in 1840, it is provided, that “ the Weldon toll-bridge, shall vest in, and be owned and possessed by, die Portsmouth and Roanoke rail-road company, in the same manner that all other property, real and personal, which
 
 *133
 
 has boon acquired by said Portsmouth and Roanoke rail-road company, is owned, held and possessed.”
 

 It follows, that the deed to Dudley, having apt words there:br, conveyed an estate in fee simple, and that the equity of redemption of Ihe company, was subject to sale under execution, l)y force of the Act of 1812 ; indeed, the title of the defendants to the equity of redemption, to that part of the bridge lying in Halifax, was acquired by a sale, under an execution issued from the Superior Court of Warren county ; so, both parties claim in the same mode; and if the title was not valid, the Portsmouth and Roanoke rail-road company having lost its corporate existence, there would he no ooo to call upon tiro defendant Dudley to account for the excess of the trust fund. As both parties assume that an equity of redemption is divisible, and may bo sold in separate parcels, it is unnecessary to express an opinion upon the question; it is alluded to merely to say that we have formed no opinion in regard to it.
 

 2. The defendants, the Seaboard and Roanoke rail-road, company, oppose this claim by denying that the plaintiff, (if by his purchase at execution sale, ho acquired the equity of redemption in any part of the bridge,) acquired it in that part lying in the county of Northampton, which is erected over the land, from low-water mark at the north side of the river, across the island and Little river to the north hutment; for, as they insist, this part of the bridge was not owned by the Portsmouth and Roauoke rail-road company, and, consequently, did not pass by the deed to Dudley ; and they contend that the plaintiff, if entitled to any part of the excess, is only entitled to such part as is in proportion to the value of that part of the bridge lying over the channel of the main river, compared with the value of the part lying in the county of Halifax (about which there is no dispute), and also the value of that part lying over the land on the Northampton side, from-low-water mark to tbe north abutment; in oilier words, as the value of the middle section (as it may be termed) is to the value of the rest of the bridge.
 

 
 *134
 
 In support of this position, it is averred, that the land, upon which the
 
 “ north section”
 
 of the bridge is erected, belonged, at the time of its erection, to one Martha Carter, the wife of John Carter; that said John died in 1843, and Martha in 1847, leaving, as her heirs, one Williams, and Martha, the wife of one Bell; that Williams sold to Bell in 1848, and Bell and wife, in 1849, sold to the defendants, all the land covered by the bridge, and a slip, eighty feet wide, from low-water mark to the north hutment, whereby, these defendants insist, the title to this part of the bridge vested in them. It is admitted, that the bridge was brrilt on said land by the consent of John Carter, but it is denied that there ever was any judicial condemnation of the land to the use of the company, nor was there ever any conveyance of the same, or any grant of the privilege to erect the bridge, made by Martha Carter to the company, but the bridge was built without her consent, and without any damages paid or secured to her.
 

 To meet this objection, the plaintiff, by an amended bill, admitting the facts in reference to the title of the land, and the deed made by Bell and wife to the defendants, the Seaboard and Roanoke rail-road company, insists, in the first place, that there was a presumed dedication of the land to the bridge company, the bridge having been used by that comjDany and the Portsmouth and Roanoke rail-road company, from 1837, until about 1845, when the company lost its corporate existence, say eight years in all, and two years after the death of John Carter, during which time, Martha Carter, was not under the disability of coverture. 2nd. That the deed to Bell and wife, (if there was no dedication,) passed only the land, and did not pass the piers, hutment and superstructure of the bridge. 3rd. That the president and some of the directors of the company were present, and bid for the bridge, at the sale made by the defendant Dudley, and did not make known, in any manner, that the company claimed the bridge, or any part thereof; but concealed the fact that any claim was set up, other than that which Dudley was about to sell, whereby the plaintiff was induced to bid, and become the
 
 *135
 
 purchaser, under the belief that he would acquire title to the whole bridge; and the prayer is, that the defendants, the Seaboard and Roanoke rail-road company, may be decreed to release to the plaintiff any title that may have been acquired under the deed of Bell and wife.
 

 As to the question of a dedication : The
 
 user
 
 of the easement, by the bridge company and the Portsmouth and Roanoke rail-road company, after it succeeded to_ the rights of the former, was continued but for
 
 eight years.
 
 This is too short a time to raise a presumption of a grant, or in which to acquire title to an easement by prescription. Twenty years is the shortest period that is allowed to have that effect. This was admitted by the counsel for the plaintiff; but he insisted, that the principle of a dedication to the use of the public, was altogether different from that of prescription ; the former is not based on the idea of presuming a grant, and no particular length of time is necessary to give it effect; it may, under peculiar circumstances, have effect
 
 immediately.
 

 The plaintiff cannot sustain himself upon the principle of a dedication to the use of the public. John Carter, at the time the bridge was built, had only a
 
 particular estate¡
 
 the fee was in Martha Carter, his wife. It is settled, that a dedication by the owner of a particular estate, will not bind those in remainder or reversion, or prevent them from stopping the way dedicated, when the estate comes into possession;
 
 Wood
 
 v.
 
 Teal,
 
 5 B. and A. 454. But we will waive this objection, for the sake of avoiding the point presented by the fact, that the bridge was used for two years after Martha Carter was dis-covert, and put our opinion upon the broad ground, that the principle of dedication lias no application to the case.
 

 "What is tiie principle ? It is this: if the owner does an act, whereby he signifies his intention to appropriate land to the use of the public, as a highway or street, or square, to be used by the public as a pleasure ground, or the like, and
 
 individuals, in consequence of this act, purchase property, or build houses, with reference to its being so used by the public, and become interested to have it so continue,
 
 he is precluded
 
 *136
 
 from resuming his private riglits of property over the land, because it would be
 
 fraudulent
 
 in him to do so. When individuals have become interested in reference to the uso of the land by the public, Hie dedication takes
 
 c,Sco,i immediately
 
 'Without such particular showing, lapse of time, as in casca of prescription, raises a. presumption that a resumption of the private right would be injurious to interests acquired on the faith of its continuing to bo used by the public, and the resumption would, therefore, bo fraudulent. The dedication to public use does not operate as a
 
 grants
 
 but. as an
 
 estoppel in vais.
 
 Tbe doctrine is adopted,
 
 ex
 
 necessitate, because there can be no grantee, and regarding it, not as transferring a right, but as operating to preclude the owner from resuming his light of private property, on the ground that it would be fraudulent in him lo do so.
 
 Tic
 
 are freed from Hie necessity' of inventing an anomalous interest, which passes wiihoutany legal ceremony, and ves is wi ilion t any legal owner. Geo notes to
 
 Dovaston
 
 v.
 
 Payne,
 
 2 Gmilh’s Leading Gases, 00, where the English and American cases are examined witb great ability, and the above principle is clearly deduced.
 

 By way of illustration : If the owner of land makes a street opening into ancient streets at both ends, and builds a double row of houses, and sells or reñís the houses, this is instantly a street or highway;
 
 Woodyer
 
 v. Hadden, 5 Taunt. 125. So, if the owner of a tract of land lays it off into streets and a public square and lots, and sells the lots, this is forthwith a dedication of the streets and square;
 
 City of Cincinnati
 
 v. White, 6 Peters 431;
 
 New Orleans
 
 v.
 
 The United
 
 States, 10 Peters 662.
 

 In our case, there is not a single element upon which the principle of dedication rests. The land was not
 
 appropriated by the owner to the public use.
 
 On the contrary, the bridge company entered and appropriated the land to its own purposes. The suggestion, that the company intended the bridge co be used by the public as a “ toll-bridge” lias no bearing on the question. The same may be said, of every rail-road. The point is, this property was not to be that of the public.
 

 '
 
 
 *137
 
 but was to be tbe private property of the company, tobe used by it for gain ; and the circumstance, that its use would be of public convenience, is entirely collateral. So, tbe dedication was not to the public.
 

 No
 
 iud':-;',idv.ais had acquired property or
 
 interests, in reference to iliis land, as having been dedicated to the public, and without “ that
 
 particular
 
 showing,” as we have seen, tbe dedication can only be perfected by lapse of time. In tbe last place, here was a company capable of purchasing and taking by grant ; so the necessity, because there could be
 
 no grantee,
 
 did not call the principle of dedication into operation, or justify any departure from tbe ordinary modes of acquiring title to land.
 

 It vas the folly of tbe company to build tbe bridge without securing tbe title to tbe land, and tbe interest is so large, that v e cannot help being astonished at tbe negligence or ignorance of its agents.
 

 2. If one enters upon the land of another, and builds thereon a house, bridge or other fixture, the owner of the land is entitled to the house, bridge or fixture. This is familiar learning. Whether the party can, in equity, recover compensation from the owner, who stands by, and sees him expend his money, depends on circumstances.
 
 Albea
 
 v.
 
 Griffin, 2
 
 Dev. and Bat. Eq. 9. But this is beside our question. We are of opinion that the deed of Bell and wife, did pass to the defendants, flie Seaboard and Roanoke rail-road company, tbe piers, butment and superstructure of the bridge, as well as the land on which it was situate.
 

 3. This is a question of fact. The defendants, in their answer to the amended bill, aver, that the plaintiff had full notice of the existence of the deed of Bell and wife, before he became the purchaser; that the defendant Dudley, at the opening of the bidding, stated, in the presence of the plaintiff, that he sold only such right and interest as
 
 he had
 
 a right to sell, under the deed of trust to him, and that Bell, at the time, produced, and either read or recited, the contents of a copy of the deed, which had been executed by himself and wife, to
 
 *138
 
 the defendants, the Seaboard and Roanoke rail-road company, in the presence and hearing of the plaintiff. These facts are proven by the witnesses Simmons, Crowder and Bell, and fully establish that the plaintiff had notice of the claim of the defendants, under Bell and wife, before he purchased. It is true, the purpose avowed by Bell, and his reason for reading a copy of the deed, was to assert his own rights, if he had any; but nevertheless, the plaintiff, was thereby informed of.tire fact, that the defendants had procured the execution of that deed. "Whether the defendants had thereby acquired any rights, and to what extent, was a question which could not then be determined ; but notice of the existence of the deed, was sufficient to prevent the plaintiff from having the aid of the principle of equity, which he invokes for the purpose of being relieved from the effect of that deed. lie had notice, and was, therefore, not deceived; although he may have been mistaken as to the legal effect of the deed.
 

 It must be declared to be the opinion of the Court, that the plaintiff has no title to the
 
 “
 
 northern section” or that part of the bridge on the north side of the river, from low-water mark to the north butment.
 

 3. Having decided that the plaintiff is not entitled to the north section of the bridge, it follows that the mode of dividing the surplus suggested by him must be rejected. We also reject the mode suggested by the defendants. As the Portsmouth and Roanoke rail-road company did notown the north section, it did not pass by the deed of trust to the defendant Dudley, and was not sold by him, and must consequently be put out of the case. '
 

 The excess of the fund, after deducting the debt secured by the deed of trust, together with interest, will be divided between the plaintiff and the defendants, in the proportion of the value of the middle section, to that of the south section or part lying in the county of Halifax ; for this purpose a commissioner will be appointed to make the valuation and division. The cost will be paid out of the fund. No abatement of interest upon the debt secured by the deed of trust, is al
 
 *139
 
 lowed; because tbo plaintiff, at the time be made the tender, required, as a concurring stipulation, that a release of the lien, in the whole bridge should be executed, to him; whereas, the defendants, the Seaboard and Roanoke rail-road company, had the equity of redemption in the south section.
 

 Per
 
 Oüeíam. Decree accordingly.