GROGAN *v*. THE TOWN OF HAYWARD.

*(Circuit Court, D. California.* October 6, 1880.)

1. DEDICATION OF LAND FOR PUBLIC PURPOSES—DEFINITION.—"A dedication of land for public purposes is simply a devotion of it, or of an easement in it, to such purposes by the owner, manifested by some clear declaration of the fact."

2. SAME—WHEN IRREVOCABLE.—Such dedication is irrevocable when third parties have been induced to act upon it, and part with value in consideration of it, although it has not been formally accepted by the public authorities.

3. SAME—SAME.—In such case the irrevocable character of the dedication is not affected by the fact that the property is not at once subjected to the uses designed.

  *Bowan's Executors* v. *The Town of Portland,* 8 B. Mon. 232.

4. SAME—ADVERSE OCCUPATION.—No one can acquire by adverse occupation, as against the public, the right to a street or square dedicated to public uses.

  *Hoadley* v. *The City of San Francisco,* 50 Cal. 265.
  *People* v. *Pope,* 53 Cal. 437.

*Andros & Page,* for plaintiff.
*Mastick, Belcher & Mastick,* for defendant.

FIELD, C. J. This is an action for the possession of a parcel of land situated in the town of Hayward, Alameda county. The plaintiff traces title to the premises from one Guillermo Castro, to whom a grant of land, of which they are a part, was made by the former Mexican government. The grant was confirmed by the tribunals of the United States, under the act of March 3, 1851, and a patent was issued to the confirmee.

The defendant, the town of Hayward, claims that the premises are a part of a tract dedicated by Castro to the public use of the town previously to the conveyance under which the plaintiff asserts title. The main question for determination relates to the validity and permanence of the alleged dedication.

The facts of the case, as disclosed by the evidence, are briefly these:

In 1854, Castro, being desirous of founding a village or town on his land, selected for that purpose a portion of it,

which included his residence, as a site for the town, and caused it to be surveyed into blocks and streets, and had a map made on which the streets were named and the blocks numbered. Upon this map the town was designated San Lorenzo. The map showed that the streets were to be 80 feet wide, and that the blocks were to be 400 feet in length and 300 feet in width. One of the blocks—the one bounded on the north by Webster street, on the east by Castro street, on the west by Watkins street, and on the south by Clay street —was marked "Plaza" on the map. The premises in controversy are a part of this block.

One of the streets, called Castro street, was coincident with the county road running between San Leandro, the county seat, and San Jose, the county seat of Santa Clara county. The map was filed by Castro for record on the second of December, 1854. Subsequently two sales of parts of blocks, bounded by streets as laid down on this map, were made by him. In 1856, for the purpose, as is said, of securing to himself a lawn or yard in front of his house, he caused the street bearing his name to be resurveyed, and he located it 66 feet further west than it was located according to the map of 1854. The block occupied by him as his residence was thus widened 66 feet, and all other blocks and streets west of him were pushed 66 feet to the westward. A new map was then made of the town, showing the streets and blocks as thus changed, and on the eighth of April, 1856, was filed in the office of the recorder of the county. Soon afterwards Castro street was opened, and the county road made to conform to it, and since then, now a period of over 20 years, has been continously used as a street of the town and as part of the public highway from San Leandro to San Jose. A copy of the map was exhibited in the office of Castro to parties seeking to purchase lots in the town, and lots were sold by him and his agent, and deeds executed with reference to it, or the lots were bounded by streets designated upon it. The block marked "Plaza" was spoken of by them as reserved for public use, and sales of portions of it were refused for that reason.

The plaintiff derives whatever title he has from the pur-

chaser at a sale made in 1864 upon a foreclosure of mortgages upon the tract of land embracing the town of San Lorenzo, executed by Castro in 1858, 1859, and 1862.

The name of the town was subsequently changed from San Lorenzo to Hayward, and under this latter name was incorporated by the legislature in March, 1876. The act of incorporation authorized the board of trustees created by it "to provide for enclosing, improving, and regulating all public grounds at the expense of the town," and, of course, to take control of them for that purpose.

Sometime prior to January 5, 1877, Luis Castro, son of Guillermo, as county surveyor, by direction of the board of trustees, made a survey of the town in accordance with the map of 1856, and the survey was finally approved and the map officially adopted by an ordinance passed January 6, 1877.

The plaintiff, Grogan, at the time claiming under conveyances from Castro and the holder of the mortgages mentioned, (subsequently the purchaser on their foreclosure,) constructed warehouses on a part of the block marked on the map as the "Plaza," and occupied them from 1864 to 1877. In the latter year these warehouses were burned down, and soon afterwards the authorities of the town took possession of the ground as part of its public plaza. Hence the present suit.

Under this statement of the case there ought to be no doubt as to the judgment of the court. In the light of adjudications, almost without number, in the courts of the several states, and in those of the United States, the law as to what constitutes a dedication of private property to public purposes, so as to be beyond the recall of the original owner, would seem to be settled.

A dedication of land for public purposes is simply a devotion of it, or of an easement in it, to such purposes by the owner, manifested by some clear declaration of the fact. If nothing beyond the declaration be done—if there be no acceptance by the public of the dedication, and no interest in the property be acquired by third parties—the dedication may be recalled at the pleasure of the owner. But if the dedication

be accepted by the public authorities of the place where the property is situated, or contracts for a valuable consideration be made by others founded upon a supposed appropriation of the property to the uses indicated, the dedication becomes irrevocable. In the one case the acceptance completes the transfer of the property, or easement in it, from the owner to the public; in the other case, the contract with the owner estops him from asserting any interest, except in common with the purchasers from him.

In the present case, the intent of Castro to dedicate the streets and the block marked "Plaza" in the town of San Lorenzo was manifested in the most open and public manner. The filing in the office of the county recorder of the map containing a designation of the streets and blocks, as set apart for public uses, was a public declaration of the fact. Whether, if nothing further had been done by him, there would have been any such interest acquired by the public as to forbid a subsequent assertion of ownership, may be questioned. But when by the sale of the property, by reference to the map filed, or bounded by streets marked upon it, other parties had become interested in the property set apart for public uses, the owner was precluded from asserting his original rights. The sale by the map, or with reference to the streets upon it, was a sale not merely for the price named in the deed, but for the further consideration that the streets and public grounds designated on the map should forever be open to the purchaser, and to any subsequent purchasers in the town. This was an essential part of the consideration. The purchaser took not merely the interest of the grantor in the land described in his deed, but, as appurtenant to it, an easement in the streets and in the public grounds named, with an implied covenant that subsequent purchasers should be entitled to the same rights. The grantor could no more recall this easement and covenant than he could recall any other part of the consideration. They added materially to the value of every lot purchased.

No formal acceptance by the public authorities of the dedication, upon which the counsel for the plaintiff so much insist,

was essential. No such acceptance could have been had until the town was organized by the legislature. Until then there were no officers of the public to express an acceptance, and Castro held the legal title of the property dedicated in trust for the public, being precluded by his sales from the assertion of ownership freed from the public easement. A formal acceptance by the public authorities of a dedication may be necessary to impose upon them the duty of protecting the property and keeping it in a condition to meet the uses designed, —as, for instance, to open and repair a street,—but it is in no respect essential to complete the dedication and preclude the original owner from revoking it. The dedication is irrevocable when third parties have been induced to act upon it and part with value in consideration of it. Nor is this irrevocable character of the dedication affected because the property is not at once subjected to the uses designed. In many instances, perhaps the greater number, there may be no present need of the land for the purposes contemplated, as in the case of streets and parks laid out upon a tract added to an existing city to meet its supposed future growth, or, as in the present case, upon a tract selected as a site for a new town. In such cases it is understood that the property will only be subjected to the uses intended as it may be from time to time needed to meet the growth of the place. If an immediate subjection were required in such cases, the object of the dedication would be defeated.

As already indicated, adjudications in cases similar to the one now before the court are numerous, and in all of them, without exception, the views here expressed are sustained. One of them—*Rowan's Executors* v. *The Town of Portland*, 8 B. Mon. 232—may be mentioned as especially learned and instructive upon the subject.

The change in the position of some of the streets 66 feet further west of their original position, as shown on the map of 1854, when only two sales had been made, does not appear to have met with any objection from the previous purchasers; and the subsequent sales according to the map of 1856, and the approval by the trustees of the town of the survey of 1877,

made in accordance with it, would seem to obviate all objections to the change, even if the plaintiff were in a position, as he is not, to contest its validity.

The mortgages, upon the foreclosure of which the land was sold and the grantor of the plaintiff acquired his title, were executed after this dedication had become irrevocable, and the purchaser at the mortgage sale took whatever rights he acquired in subordination to the interest of the public, represented since the incorporation of the town by its authorities.

As to the defence that the statute of limitations of the state has barred the action, it is sufficient to refer to the decisions of the supreme court of California in *Hoadley* v. *The City of San Francisco*, 50 Cal. 265, and *People* v. *Pope*, 53 Cal. 437. According to them, no one can acquire by adverse occupation as against the public the right to a street or square dedicated to public uses. The construction given by the supreme court of the state to the local statute is conclusive upon this court. It follows that the finding of the court upon the issues presented must be for the defendant, and judgment will accordingly be entered in its favor.