KIRCHEN v. REMENGA.

1. EASEMENTS—DEDICATION—PLATS—ESTOPPEL.
   When the proprietors of platted land have dedicated lots for streets or for a public square and sold lots with reference thereto, they cannot resume and exercise rights of ownership over them which will deprive their grantees of any privilege which they might derive from having such streets or squares left open.

2. SAME — PLATS — ESTOPPEL — ACCEPTANCE BY PUBLIC — PRIVATE RIGHTS.
   The proprietor of platted land who sells a lot which is bounded by a street therein is estopped from shutting it up so as to prevent the vendee from making use of it for his own accommodation in the enjoyment of his purchase irrespective of whether the public have acquired a right of way or not, although the proprietor may close off streets not accepted by the public where private rights are not directly affected.

3. DEDICATION—PLATS—PARKS—COMMON USE.
   The sale of lots with reference to a plat in which areas are designated as parks passes to the purchasers of the lots a common right to use such areas for park purposes.

4. SAME—SUMMER RESORT SUBDIVISION—PARK AREAS.
   Purchasers of lots in subdivision of land used for summer resort purposes, in which portions of the plat were designated as parks, are entitled to the preservation of the park areas in substantially their natural state, free from the intrusion of private individuals or corporations who may seek to acquire and exercise exclusive rights therein.

5. SAME—PARK—ENFORCEMENT BY INJURED INDIVIDUAL OWNER.
   Where there is no municipal corporation to assert the general right of the public, an individual purchaser to be injured by the perversion of a park from its public uses may maintain an action in behalf of himself and others similarly interested to prevent such perversion.

6. SAME—EXTENT OF RIGHT ACQUIRED.

The right which passes to the purchasers of lots appurtenant to land dedicated for park purposes is not the mere right or privilege for each purchaser to use such park according to his purposes, but the right acquired by each purchaser is that all persons entitled thereto may use them as their occasion may require or invite.

7. SAME—EQUITY—JURISDICTION—PRESUMPTION OF CONSIDERATION.

Land in a subdivision which has been dedicated to the public for use for park purposes is held in trust for that use and a court of equity will interfere at the suit of a *cestui que trust* or a *cestui que use,* such as the owner of a lot in the subdivision, to prohibit a violation of the trust or a destruction of the right of user, since part of the consideration for which he may be presumed to have purchased lay in the enhancement of the value of the property from the dedication.

8. SAME—LOT OWNERS' INTEREST IN LANDS IN PLATS FOR PUBLIC USES.

The lot owners in a subdivision have a peculiar interest in parcels of land therein dedicated to public uses, not claimable by either the local or general public; a private right in the nature of an incorporeal hereditament legally attached to the contiguous grounds and the erections thereon; an incidental title to certain facilities and franchises.

9. SAME—LOT OWNERS' APPURTENANT EASEMENTS IN PUBLIC USE LANDS.

Purchasers of lots in a subdivision took not only the interest of the grantor in the land described in their respective deeds, but, as an incorporeal hereditament appurtenant to it, took an easement in the streets, parks and public grounds mentioned and designated in the plat as an implied covenant that subsequent purchasers should be entitled to the same rights, and the grantors could not recall such easement and covenant any more than they could recall other parts of the consideration.

10. SAME—ENFORCEMENT OF EASEMENT IN PUBLIC GROUNDS.

Easement in land dedicated for use as streets, parks, and public grounds, which is appurtenant to lots in a subdivision, is valid and enforceable not only against the plattor of such land but against all who hold under the original grantor.

11. EASEMENTS—SALE OF LOTS IN PLATS WITH PARK AND OTHER PUBLIC AREAS—IMPLIED COVENANTS.

> The sale and conveyance of lots, according to a plat upon which it is represented that portions are parks, public squares or commons, implies a covenant that the land so designated shall never be appropriated by the owner or his successors in interest to any use inconsistent with that represented on the original map, which implied covenant may be enforced in equity by injunction.

12. DEDICATION—SUBSEQUENT MORTGAGE.

> Mortgagee of subdivision, upon the foreclosure of the mortgage, acquired title subject to the irrevocable dedication of land for park purposes which had been made before the mortgage was executed.

13. SAME—ACKNOWLEDGEMENT AND RECORDING OF PLATS—EXPRESS GRANT—ESTOPPEL.

> The due acknowledgment and recording of a plat has all the force and effect of an express grant, operates by way of estoppel, and concludes the former owner and all persons claiming by, through, or under him from asserting title in contravention of the terms of the grant.

14. MORTGAGES—TITLE CONVEYED.

> A mortgagee of lands in a subdivision cannot acquire by foreclosure better title than the mortgagor had, as a mortgage may convey only such title and interest as the mortgagor then has in the premises.

15. ESTOPPEL—TITLE TO LAND.

> The title to land may not, in this State, rest on estoppel.

16. DEDICATION—CONVEYANCE OF LAND FOR PUBLIC USES IN TRUST.

> Original plat of land, made in 1886, *held*, a sufficient conveyance to vest in the county wherein the land was located the fee of such parcels of land as were therein expressed to be for public uses, in trust to and for the uses and purposes therein expressed, and for no other use or purposes whatever where statute then in force provided that the due making, acknowledgment, and recording of a plat should be deemed a sufficient conveyance to vest in the county in which the land lies the fee of parcels of land expressed for public uses, in trust (Act No. 91, § 2, Pub. Acts 1839, as last amended by Act No. 111, Pub. Acts 1885).

17. SAME—PLAT AS CONVEYANCE—"BASE FEE."

The term "base fee," as used with reference to description of estate in land dedicated to public uses conveyed to the county by plat, was used in the sense of a fee which has a qualification annexed to it (Act No. 91, Pub. Acts 1839, as last amended by Act No. 111, Pub. Acts 1885).

18. SAME—PARKS—ABANDONMENT—BURDEN OF PROOF—EVIDENCE.

In suit to quiet title to lands in a subdivision used for summer resort purposes, defendants' burden of proof that use as parks of lands designated on plat for use as parks had been abandoned held, not sustained, as abandonment occurs only when the use for which the property is dedicated wholly fails, plaintiffs do not claim exclusive rights to the use and possession, and it is not shown that such use as they have made of the lands for park purposes has ever ceased.

19. SAME—PARKS—BUILDINGS—ABANDONMENT—EVIDENCE.

Erection of hotel, grocery store, boat livery, powerhouse, garage, and other buildings in plat for summer resort purposes on land which had been designated for park purposes, without objection by lot owners who then regarded them as a convenience not inconsistent with their use of the land for park purposes, held, not an abandonment of their use for park purposes.

20. LIMITATION OF ACTIONS—FAILURE TO PROSECUTE REMEDY—POSSESSION.

No one can be cut off by limitation until he has failed to prosecute the remedy limited; and no one can be compelled to prosecute when he is already in possession of all that he demands.

21. ADVERSE POSSESSION — PERMISSION — CONSISTENT POSSESSION WITH ANOTHER.

A mere permissive possession, or one consistent with the title of another, however long continued, can never ripen into a title by adverse possession.

22. SAME—OCCUPANCY MUST BE EXCLUSIVE, NOTORIOUS, AND CONTRARY.

Occupancy of land, to constitute adverse possession, must be exclusive, known to, and against the will and consent of, those interested and whose right it is to contest.

23. JUDGMENT—RES JUDICATA—PARTIES.

Lot owners in a subdivision whose plat was duly recorded in 1886 and whose proprietors thereafter gave a mortgage on

property designated in the plat as for use of public but which
had not been accepted by public authorities were not bound by
decree in suit to foreclose mortgage, where not made parties
defendant therein (Act No. 91, Pub. Acts 1839, as amended).

24. DEDICATION—PARK AREAS—VACATION—REASONABLE OBJECTION.
    The taking away of conditions prized by lot owners in a sub-
        division used for summer resort purposes in such a way as to
        impair the enjoyment of their property, which would result
        from the subdivision and sale of the public areas for profit,
        *held,* to constitute a reasonable objection on part of lot owners
        to petition of dedicator's grantees to vacate portions of the
        plat including public park areas.

25. CORPORATIONS—STOCKHOLDERS—CONSENT—ESTOPPEL—MORTGAGES
    —PUBLIC PARK AREAS.
    Lot owners of subdivision used for summer resort purposes who
        became stockholders in a corporation upon purchase of lots
        *held,* not estopped to deny title of plaintiffs to certain public
        areas because certain of them, as stockholders, had consented
        that the corporation execute a mortgage through the fore-
        closure of which plaintiffs herein lay claim of title, as the con-
        sent of the stockholders of a corporation to the execution of a
        corporate mortgage confers no authority upon the corporation
        to mortgage property rights and interests it does not own but
        which it had parted with, previous to giving of consent, by a
        sufficient conveyance of the fee to the county to be irrevocably
        held in trust by it for certain dedicated purposes.

26. PROPERTY — PLAT AS EVIDENCE OF OWNERSHIP — SUBSEQUENT
    PLATS.
    No legal proceedings having been taken to vacate original plat
        which was duly filed and recorded, a subsequent plat of the
        same land would be without force and effect, and owners of
        lots purchased from original plattors would be under no obliga-
        tion to object to the filing of such subsequent plat.

27. DEDICATION—HOUSE ERECTED IN PUBLIC PARK—REMOVAL.
    In suit by lot owners of subdivision used for summer resort pur-
        poses against parties who claimed under subsequent convey-
        ances of land dedicated to public use in the original plat which
        had never been vacated, decree requiring a certain defendant
        to remove his house from land designated as a park area is
        affirmed where house was built after circuit court had made
        an adjudication with respect to such area and denied vacation
        of plat as to it.

28. SAME—LIS PENDENS—GASOLINE STATION ON PUBLIC PARK—RE-
MOVAL.

In suit by lot owners of subdivision used for summer resort pur-
poses against parties who claimed under subsequent conveyances
of land dedicated to public use in the original plat which had
never been vacated, decree requiring defendant who had pur-
chased land and erected gasoline station thereon since suit was
started is affirmed, since he acted at his peril while suit
involving the land was pending and where the land is some
also involved in former litigation in which the original plat
was unsuccessfully sought to be vacated in part.

29. ESTOPPEL—BEER TAVERN—IMPROVEMENTS.

Lot owners of subdivision used for summer resort purposes *held*,
estopped to object to maintenance of beer tavern in building
erected on land designated on plat as public park area, used by
lot owners for storage garage for a number of years and con-
verted at expense of $5,000 into present use without objection,
where present owner was not a party to previous litigation
involving matter of vacating such site as public park area.

30. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ASSIGNMENTS OF
ERROR—ARGUMENT.

Decision of circuit court insofar as it affects rights of one
litigant is not discussed where her rights under the decree are
not referred to in the assignments of error nor mentioned in
the argument.

BUTZEL, C. J., and WIEST, J., dissenting.

Appeal from Ottawa; Verdier (Leonard D.), J.,
presiding. Submitted June 7, 1939. (Docket No. 36,
Calendar No. 40,527.) Decided November 9, 1939.
Rehearing denied February 14, 1940.

Bill by Charles Kirchen and others, individually
and as members of the West Michigan Park Asso-
ciation, and the West Michigan Park Association
against John Remenga and others to enjoin the use
of land, quiet title, and for other relief. Cross bill
by defendants against plaintiffs to quiet title and
for other relief. From decree rendered, defendants
appeal. Modified and affirmed.

*Grant Sims* and *Smith, Strawhecker & Wetmore*,
for plaintiff.

*Arthur Van Duren, Cornelius Vander Meulen,*
and *Diekema, Cross & Ten Cate,* for defendants.

POTTER, J.   This suit is brought by approximately
30 lot owners in what is known as Ottawa Beach
resort to restrain defendants from using and selling
certain lands originally platted for street and park
purposes, and to compel the removal of buildings
located thereon.   It was consolidated and tried with
a suit by Hazel Tracy Eggleston, one of the lot
owners, to establish title to a portion of the park
lands adjoining a lot which she owns.

In 1886, the West Michigan Park Association was
incorporated under Act No. 151, Pub. Acts 1869, as
amended (How. § 4824 *et seq.*).   The plan of organ-
ization is sufficiently described in *West Michigan
Park Ass'n* v. *Railroad Co.,* 172 Mich. 179.   It ac-
quired title to the lands in question.   September 21,.
1886, the corporation filed a plat of about 50 acres
of land along the shores of Black Lake and Lake
Michigan with the auditor general and the register
of deeds of Ottawa county.   On this plat there ap-
peared 150 lots designated by number, the remainder
of the land being designated as parks, walks, streets,
et cetera.   The plat was laid out so as to make each
lot adjacent to one of the parks.   Lots were sold
and deeded with reference to the plat.   Each lot
purchaser became a stockholder in the corporation.
Summer homes were built on many of the lots.

In 1889, the corporation gave a mortgage cover-
ing the entire plat, with the exception of 150 lots,
the streets, walks, et cetera, the park land not being
mentioned as an exception.   This mortgage was
foreclosed in chancery and a commissioner's deed
executed to Charles M. Heald, May 1, 1895.   An
execution to satisfy a deficiency judgment on the
mortgage resulted in a sheriff's sale of the same

premises to Heald, February 1, 1897. This deed recited the expiration of the redemption period. Heald held the property under the commissioner's deed and under the sheriff's deed and his title was later acquired by the Ottawa Beach Resort Company, a corporation organized under Act No. 230, Pub. Acts 1897.

In 1892, the West Michigan Park Association filed a resubdivision plat with the auditor general and register of deeds of Ottawa county, in which certain of the areas designated as "park" on the original plat were changed to lots, and streets and alleys were dedicated to the public. No proceedings were taken to vacate the original plat. A hotel, grocery store, boat livery, powerhouse, garage, and other buildings were erected on the park land from time to time, but the use of these structures has been for the most part discontinued.

In March, 1926, the Ottawa Beach Resort Company mortgaged its holdings to the First State Bank of Holland, Michigan, for $16,500. This mortgage was foreclosed and bid in by the bank in 1932. In 1933, the bank conveyed the property by quitclaim deed to the defendant trustees of its segregated assets. Several parcels of land designated as "park" in the original plat were sold by the trustees and others were offered for sale as cottage sites. The other defendants named herein hold under deeds from these trustees. Defendant Remenga has erected a gasoline station on one of these lots. Defendant Van Wieren has erected a home on another of such lots. Defendant Kilcare, Incorporated, has purchased another lot and operates a beer tavern in what was formerly a garage used for storage of cottage-owners' cars. The defendant trustees have whatever title the West Michigan Park Association had in the property with the exception of such lots

as were sold by them. The remainder of the park property has been left largely in its natural state, except that walks have been built and street lighting installed. Neither the State, county or township has made improvements on the park lands or streets, nor have they done anything to indicate public acceptance of the dedication thereof.

Hazel Tracy Eggleston, plaintiff in her case and a defendant in the principal case, owns lot No. 34 of the original plat. Her father built a cottage on the lot in 1890. Adjacent to the lot is a strip of land which is reserved for a park or a road on the original plat. A roadway runs through the strip which has been used since the beginning of the resort. A boathouse belonging to Mr. Eggleston was moved onto this strip and converted into a garage. Mrs. Eggleston claims the right to the possession and use of this strip to the exclusion of the public, except that part used for actual roadway. In 1892 or 1896, Mrs. Eggleston's father purchased from Mr. Heald the parcel immediately south of lot No. 34, 50 feet north and south by 100 feet east and west. He also planted flowers and shrubs on the triangular piece to the south of the latter parcel and fenced both parcels against the intrusion of the general public.

The West Michigan Park Association as originally incorporated has long since ceased to exist. The present organization known by the same name is a voluntary association of cottage owners.

The main question here involved is whether the lot owners have a right to the preservation of the park lands as such.

"There is no doubt that when the proprietors of a village or town have dedicated lots for streets *or for a public square,* and have sold lots with reference to such plan, they cannot resume and exercise

rights of ownership over them which will deprive their grantees of any privilege which they might derive from having such streets or squares left open." *Sinclair* v. *Comstock,* Harr. Ch. (Mich.) 404.

"It is also well established, with respect to a purchaser of lots described as bounded on a street, that the vendor is estopped from shutting it up so as to prevent his vendee from making use of it for his own accommodation in the enjoyment of his purchase. It becomes a matter of private right, and in no way depends upon the question whether the public have acquired a right of way or not." *Plumer* v. *Johnston,* 63 Mich. 165, citing *Smith* v. *Lock,* 18 Mich. 56; *Purkiss* v. *Benson,* 28 Mich. 538; *Karrer* v. *Berry,* 44 Mich. 391.

"As between individuals so purchasing and the proprietor, they are entitled to have the streets necessary or convenient for their use and enjoyment of the property purchased by them kept open for their own and the public's use. But such proprietor is not estopped from reclaiming or shutting up any street or portion thereof delineated on his plat, where private rights are not directly affected; and as against the municipality claiming the streets, where the public have not acquired rights by user, or acceptance of the offer to dedicate, indicated by the platting, the owner is not estopped. He may revoke or recall his offer to dedicate before actual acceptance at any time, when the plat has not been executed in accordance with the statute, and placed upon record." *Diamond Match Co.* v. *Village of Ontonagon,* 72 Mich. 249, citing *City of Galveston* v. *Williams,* 69 Tex. 449 (6 S. W. 860); *People* v. *Beaubien,* 2 Doug. (Mich.) 256; *People* v. *Jones,* 6 Mich. 176; *Baker* v. *Johnston,* 21 Mich. 319; *City of Detroit* v. *Railroad Co.,* 23 Mich. 173; *County of Wayne* v. *Miller,* 31 Mich. 447; *Cass County Board of Supervisors* v. *Banks,* 44 Mich. 467; *Buskirk* v. *Strickland,* 47 Mich. 389.

"But it is also the rule in this and other States that the platting and sale of lots constitute a dedication of streets, et cetera, delineated on the plat, as between the grantors and the purchasers from them." *Pulcifer* v. *Bishop,* 246 Mich. 579.

The sale of lots with reference to a plat in which areas are designated as parks passes to the purchasers of the lots a common right to use such areas for park purposes. *Schurtz* v. *Wescott,* 286 Mich. 691.

It is settled by the authorities in this State that the purchasers of lots in the original plat were entitled to the preservation of the park areas in substantially their natural state, free from the intrusion of private individuals or corporations who may seek to acquire and exercise exclusive rights therein. *Cooper* v. *Alden,* Harr. Ch. (Mich.) 72; *People* v. *Beaubien, supra; People* v. *Jones, supra; Smith* v. *Lock, supra; Baker* v. *Johnston, supra; City of Detroit* v. *Railroad Co., supra; White* v. *Smith,* 37 Mich. 291; *Karrer* v. *Berry, supra; Grand Rapids & I. R. Co.* v. *Heisel,* 47 Mich. 393; *Village of Grandville* v. *Jenison,* 84 Mich. 54; *Conkling* v. *Village of Mackinaw City,* 120 Mich. 67; *City of Mt. Clemens* v. *Mt. Clemens Sanitarium Co.,* 127 Mich. 115; *Dodge* v. *North End Improvement Ass'n,* 189 Mich. 16 (Ann. Cas. 1918 E, 485).

The rule in Michigan is generally recognized in other states. *Calkins* v. *Westervelt,* 214 Fed. 415; *Marsh* v. *Village of Fairbury,* 163 Ill. 401 (45 N. E. 236); *Baltimore Belt R. Co.* v. *McColgan,* 83 Md. 650 (35 Atl. 59); *Thorndike* v. *Milwaukee Auditorium Co.,* 143 Wis. 1 (126 N. W. 881); *Holloway* v. *Southmayd,* 139 N. Y. 390 (34 N. E. 1047); *Morrow* v. *Highland Grove Traction Co.,* 219 Pa. 619 (69 Atl. 41, 123 Am. St. Rep. 677); *Abbott* v. *Mills,* 3 Vt. 521

(23 Am. Dec. 222) ; *Huber* v. *Gazley,* 18 Ohio, 18 ; *Fisher* v. *Beard,* 40 Iowa, 625 ; *Attorney General* v. *Abbott,* 154 Mass. 323 (28 N. E. 346, 13 L. R. A. 251) ; *Morris* v. *Sea Girt Land Improvement Co.,* 38 N. J. Eq. 304 ; *Meier* v. *Railway Co.,* 16 Ore. 500 (19 Pac. 610, 1 L. R. A. 856) ; *Rutherford* v. *Taylor,* 38 Mo. 315 ; *Smith* v. *Heath,* 102 Ill. 130 ; *Doe* v. *President & Trustees of Town of Attica,* 7 Ind. 641 ; *New Orleans* v. *United States,* 10 Pet. (35 U. S.) 662 ; 18 C. J. p. 131.

''Where there is no municipal corporation to assert the general right of the public, an individual proprietor of land to be injured by the perversion of the green from its public uses may maintain an action, in behalf of himself and others similarly interested, to prevent such perversion.'' *Cady* v. *Conger* (syllabus), 19 N. Y. 256.

The right which passes to the purchasers of lots appurtenant to land dedicated for park purposes is not the mere right or privilege for each purchaser to use such park according to his purposes, but the right acquired by each purchaser is that all persons entitled thereto may use them as their occasion may require or invite. *Rowan* v. *Town of Portland,* 47 Ky. 232 ; *Pierce* v. *Chamberlain,* 82 Mo. 618 ; *Heitz* v. *City of St. Louis,* 110 Mo. 618 (19 S. W. 735) ; *Hunter* v. *Trustees of Sandy Hill,* 6 Hill (N. Y.), 407 ; Washburn's Easements & Servitudes (4th Ed.), p. 244 ; 1 Elliott on Roads & Streets (4th Ed.), p. 142.

''The land in these parks, if it was really dedicated to the use of the public for park purposes, is held in trust for that use, and courts of equity always interfere at the suit of a *cestui que trust* or a *cestui que use* to prohibit a violation of the trust, or a destruction of the right of user. The appellee Tarrant is one of the *cestuis que use* for whom these

parks are held in trust, and the inevitable conclusion is that his interest in them is ample to enable him to maintain a suit in equity to prevent their diversion to private uses. Thus, in *Scofield* v. *Eighth School District*, 27 Conn. 499, it was held that a resident and taxpayer of the district had sufficient interest to enable him to maintain an injunction to prevent the use of the school house for religious services. The court very pertinently said that the value of the right of the district and its inhabitants to the exclusive use of the schoolhouse for school purposes was not to be measured by the mere pecuniary injury resulting from an infringement of the right. To the same effect is the decision of the supreme court of Kansas in *Spencer* v. *Joint School District*, 15 Kan. 259 (22 Am. Rep. 268), in which the opinion was delivered by Judge Brewer. Indeed, under the modern decisions, the general rule is that a resident taxpayer of a municipality has sufficient interest, and has the right to maintain a bill to prevent the unlawful disposition of the money or property of his town or city, to forbid the illegal creation of a debt or liability of his municipality, and to restrain the diversion of money or property in his town or city from any public use in which he shares to which it has been dedicated." *Davenport* v. *Buffington*, 38 C. C. A. 453 (97 Fed. 234, 46 L. R. A. 377).

The rule above stated is the rule here. *Bates* v. *City of Hastings,* 145 Mich. 574.

In *United States* v. *Railroad Co.*, 154 U. S. 225 (14 Sup. Ct. 1015), where the United States had sold public ground, after recording a plat thereof, the court said:

"The only parties interested in the public use for which the ground was dedicated are the owners of lots abutting on the ground dedicated, and the public in general. The owners of abutting lots may be presumed to have purchased in part consideration

of the enhanced value of the property from the dedication, and it may be conceded they have a right to invoke, through the proper public authorities, the protection of the property in the use for which it was dedicated.''

In *State of Texas* v. *Travis County*, 85 Tex. 435 (21 S. W. 1029), it is said:

''If the land had been dedicated unqualifiedly to public uses; if, for instance, the words 'public park' had been written upon the plat instead of the words 'courthouse' and 'jail,' we think that the public, as well as the purchasers of adjacent lots, would then have acquired rights in the property beyond the power either of the State or the county to divert or affect; and if in such case an attempt had been made to defeat or modify the enjoyment of such rights, then the remedy would have been to compel their observance by appropriate legal proceedings, which any owner of adjacent lots could have instituted. If the dedication had been of that character, it would have been available in this case by the county against the intervention of the State. *City of Cincinnati* v. *White*, 6 Pet. (31 U. S.) 431; *Warren* v. *Lyons City*, 22 Iowa, 351; *San Francisco* v. *Canavan*, 42 Cal. 541, 553; Am. & Eng. Enc. of Law, title 'Dedication.' ''

In *Cook* v. *City of Burlington*, 30 Iowa, 94 (6 Am. Rep. 649), it is said:

''It must be admitted that the fact of a location of a lot on a public square often gives it its chief value, and forms the principal consideration of the purchase. If, then, the interest of the lot owner in the square partakes so much of the nature of property, upon what principle of justice or reason shall he be denied the interposition of the courts, for the purpose of protecting and preserving this interest?''

And in the same case, referring to *Crawford* v. *Village of Delaware,* 7 Ohio St. 459, it is said:

"The lot owners have a peculiar interest in the street which neither the local nor general public can pretend to claim; a private right in the nature of an incorporeal hereditament legally attached to the contiguous grounds and the erections thereon; an incidental title to certain facilities and franchises assured to them by contract and by law, and without which their property would be comparatively of little value. This easement appendant to the lots, unlike any right of one lot owner in the lot of another, is as much property as the lot itself, and it is well added by that enlightened tribunal that, upon a doctrine so just and necessary, and resting upon foundations so solid and satisfactory, it can matter very little that our conclusions are not concurred in by the courts of some of our sister States."

See, also, *Bayard* v. *Hargrove,* 45 Ga. 342.

The purchasers of lots in the original plat took not only the interest of the grantor in the land described in their respective deeds, but, as an incorporeal hereditament (1 Sheppard's Touchstone [7th Ed.] p. 91) appurtenant to it, took an easement in the streets, parks and public grounds mentioned and designated in the plat as an implied covenant that subsequent purchasers should be entitled to the same rights. The grantors could not recall this easement and covenant any more than they could recall other parts of the consideration. They added materially to the value of every lot purchased. *Grogan* v. *Town of Hayward,* 4 Fed. 161. And the rule has been established in this State that such an easement appurtenant to the lots sold is valid and enforceable not only against the plattor of such land, but as against all who hold under the original grantor. *Westveer* v. *Ainsworth,* 279 Mich. 580;

*Schurtz* v. *Wescott, supra;* 18 C.J. p. 115. In 19 C.J. p. 935, the rule is thus stated:

"Where land is represented on a map or plat as a park, public square, or common, the purchasers of adjoining lots acquire as appurtenant thereto a vested right to have the space so designated kept open for the purpose and to the full extent which the designation imports. The sale and conveyance of lots according to such plat implies a covenant that the land so designated shall never be appropriated by the owner or his successors in interest to any use inconsistent with that represented on the original map. And the purchaser of an adjoining lot acquires such an easement in the park or public square in front of it as entitles him to proceed in equity to prevent by injunction the appropriation of the park or square to any use other than that designated on the map or plat by reference to which he purchased his lot; he is not a mere volunteer seeking to enforce the rights of the public; he has a special interest of his own to protect."

The mortgagee, upon the foreclosure of a mortgage, acquired title subject to the irrevocable dedication of these park lands.

"The mortgages, upon the foreclosure of which the land was sold and the grantor of the plaintiff acquired his title, were executed after this dedication had become irrevocable, and the purchaser at the mortgage sale took whatever rights he acquired in subordination to the interest of the public, represented since the incorporation of the town by its authorities." *Grogan* v. *Town of Hayward, supra.*

The acknowledgment and recording of the plat had all the force and effect of an express grant. It operates by way of estoppel. It concludes the former owner and all persons claiming by, through, or under him from asserting title in contravention of

the terms of the grant. *Board of Trustees of the Illinois & Michigan Canal* v. *Haven,* 11 Ill. 554. The mortgagee could not acquire by foreclosure better title than the mortgagor had.

"A mortgage conveys all the title and interest which the mortgagor then has in the premises in question; and where it purports to convey a greater estate than the mortgagor owns, it passes so much as he has a right to convey." 41 C.J. pp. 476, 477.

See, also, *Schafer* v. *Hauser,* 111 Mich. 622 (35 L. R. A. 835, 66 Am. St. Rep. 403).

"If the owner does an act whereby he signifies his intention to appropriate land to the use of the public, as a highway or street, or square, to be used by the public as a pleasure ground, or the like, and *individuals, in consequence of this act, purchase property, or build houses, with reference to its being so used by the public, and become interested to have it so continue,* he is precluded from resuming his private rights of property over the land, because it would be *fraudulent* in him to do so. When individuals have become interested in reference to the use of the land by the public, the dedication takes effect *immediately.* Without such particular showing, lapse of time, as in cases of prescription, raises a presumption that a resumption of the private right would be injurious to interests acquired on the faith of its continuing to be used by the public, and the resumption would, therefore, be fraudulent." *Rives* v. *Dudley,* 56 N. C. 126 (67 Am. Dec. 231).

This case holds that the dedication of land to public use *does not operate as a grant,* but as an *estoppel in pais.*

The title to land may not, under the law of this State, rest on estoppel. *Huyck* v. *Bailey,* 100 Mich. 223; *Nowlin Lumber Co.* v. *Wilson,* 119 Mich. 406;

*Wilson* v. *Railroad Co.*, 132 Mich. 469; *McVannel* v. *Pure Oil Co.*, 262 Mich. 518.

The doctrine of *estoppel in pais* is said to be adopted by the North Carolina court in *Rives* v. *Dudley, supra,* "*ex necessitate,* because *there can be no grantee,* and regarding it, *not as transferring a right,* but as operating to preclude the owner from resuming his right of private property, on the ground that it would be fraudulent in him to do so." The dedication there involved was a common-law dedication.

The territorial act of March 12, 1821, governing town plats, provided that when made, acknowledged, and recorded in accordance with the statute, they "shall be deemed a sufficient conveyance, to *vest the fee* of such parcels of land as are therein expressed, named or intended to be for public uses, in the county in which such town lies, *in trust* to and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever." 1 Terr. Laws, p. 816. The same language was continued in section 2 of the act of April 12, 1827 (2 Terr. Laws, p. 577). This language was continued in Act No. 91, § 2, Pub. Acts 1839, as originally enacted and as amended by Act No. 35, Pub. Acts 1859, and Act No. 111, Pub. Acts 1885. By Act No. 309, Pub. Acts 1887, amending such section, it was provided:

"The map so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be therein designated for public uses in the city or village within the incorporate limits of which the land platted is included, or if not included within the limits of any incorporated city or village, then in the township within the limits of which it is included in trust to and for the uses and

purposes therein designated, and for no other use or purpose whatever.''

This rule was continued by 3 Comp. Laws 1929, § 13247 (Stat. Ann. § 26.480).

The original plat here involved was made and filed while Act No. 111, Pub. Acts 1885, was in force, and must be deemed a sufficient conveyance to vest the fee of such parcels of land as were therein expressed, named or intended to be for public uses, in the county of Ottawa, in trust to and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever.

''The statute in question provides in express terms that the plat shall have the effect to convey the fee of land dedicated to public uses to the county. A plat conforming to the statute, then, operates as a conveyance of a fee, though *probably* it is a base fee;'' and there were ''sufficient reasons for a statute which should give to a formal offer of dedication of public ground by a plat the effect of *a conveyance by way of grant to uses, and providing a grantee.*'' *Patrick* v. *Young Men's Christian Ass'n of Kalamazoo,* 120 Mich. 185.

The term ''base fee,'' which the court in the case last cited said was probably meant by the statute, was used in the sense of a fee which has a qualification annexed to it. 1 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 329. This is apparent from the later language above quoted. The reasoning of the North Carolina court is inapplicable here.

Defendants contend plaintiffs have abandoned whatever rights they may have had in the premises dedicated for park purposes, and that defendants have acquired rights therein by adverse possession. It does not appear plaintiffs and their grantors ever ceased to use the park lands for the purposes

for which they were dedicated. Plaintiffs do not claim exclusive rights to the use and possession of the park lands, but only claim they are entitled to use them in common with others in the same manner in which parks are generally used. Such use by plaintiffs and by their grantors has been continuous, and it cannot be said that abandonment has taken place. The burden of proving abandonment is upon the party asserting it, and abandonment occurs only when the use for which the property is dedicated wholly fails. *Delaware, L. & W. R. Co.* v. *City of Syracuse,* 157 Fed. 700; *Sipe v. Alley,* 117 Va. 819 (86 S. E. 122); *Horey* v. *Village of Haverstraw,* 124 N. Y. 273 (26 N. E. 532); 18 C. J. p. 123; *Sinclair* v. *Comstock, supra.* Plaintiffs contend, and we hold, such use of the park lands as has been made does not amount to an abandonment.

In *Dodge* v. *North End Improvement Ass'n, supra,* this court quoted with approval from 3 Mc-Quillin on Corporations (1st Ed.), p. 2541, as follows:

"Some of the powers of control and regulations for their use held to be reasonable and valid are: * * * Power to lay out pleasure drives around the borders of a public square, authority to erect a building in a park for public purposes, and if a building called a casino so erected is adapted to a public use, the court will not assume that is to be used for private purposes; to erect a dwelling house on park property to be used by the park superintendent and his family as a residence and also for an office by such superintendent and his associates."

The situation is similar to that in *New Orleans* v. *United States,* 10 Pet. (35 U. S.) 662. In that case, the land involved had been dedicated as a public

quay. The effect of the erection of buildings upon the premises was raised. It was said:

"This entire vacant space has been used for the purposes to which it was appropriated, with but occasional and slight interruptions to small portions of it, from the establishment of the designation of the quay in 1724, until the present time. The interruptions referred to were not such as deprived the public of the proper use of the ground. They were generally of a temporary nature, and were permitted where private accommodation was in some degree connected with the public convenience. Temporary shops, and baths, which were constructed upon this ground, were of this character. The public established, at different times, and for different purposes, buildings of a more permanent description; but these were rendered necessary for the public service, and they seem not to have encroached, to any injurious extent, on the public use of the quay. Some of these buildings have long since disappeared, and any of them which may still remain do not subject the city or the public to any inconvenience."

Not only did the erection of buildings on the park lands under the circumstances without objection by the lot owners not amount to an abandonment, but the erection of such buildings without objection from the lot owners on such lands was at the time they were built regarded as a convenience not inconsistent with plaintiffs' use of the land for park purposes. As said in *Westveer* v. *Ainsworth, supra:*

"Nothing has occurred within the boundaries of the plat or outside to render their plan, in operation for over 40 years, abortive or impossible of indefinite continuance."

It was there held that subdivision and sale of the premises for profit would destroy rights belonging to the purchasers.

"No one can be cut off by limitation until he has failed to prosecute the remedy limited; and no one can be compelled to prosecute, when he is already in possession of all that he demands." *Groesbeck* v. *Seeley,* 13 Mich. 329, 343.

"A mere permissive possession, or one consistent with the title of another, however long continued, can never ripen into a title by adverse possession." *Township of Jasper* v. *Martin,* 161 Mich. 336 (137 Am. St. Rep. 508).

"The occupancy must be exclusive, known to and against the will and consent of those interested, and whose right it is to contest." *Marble* v. *Price,* 54 Mich. 466.

Two other cases have been heard in this court involving this same summer resort:

*West Michigan Park Ass'n* v. *Railroad Co., supra,* recognized that the individual cottage owners, not having been made parties defendant in the foreclosure proceeding, were not bound by the decree and *are entitled to their day in court when contingencies arise on which they desire to act.*

In *Westveer* v. *Ainsworth, supra,* a petition was filed by the trustees of the segregated assets of the First State Bank of Holland, Michigan, defendants herein, to vacate the plat. It was said:

"We need not attempt to define precisely the sort of title the lot purchaser has in the public grounds."

And, further:

"It is a reasonable objection to vacation of the plat that it is proposed to take from the lot owners the conditions they prize as advantages and for which they have paid, impair the enjoyment of their property and subject it to the destruction which would result from subdivision and sale of the public premises for profit."

It is claimed the lot owners are estopped to question defendants' title because some of them, as stockholders, signed a written consent that a mortgage on the property be executed by the old corporation. The consent of stockholders of the corporation to the execution of the corporate mortgage conferred no authority upon the corporation to mortgage property rights and interests it did not own but which it had parted with by a sufficient conveyance of the fee to the county of Ottawa, to be irrevocably held in trust by it for the uses and purposes to which it was dedicated before such consent was given.

Defendants cannot gain any advantage by reason of the attempted plat in 1892. No legal proceedings were instituted to vacate the original plat of the premises and the proposed plat of 1892 is without force and effect. Plaintiffs were under no obligation to object to the filing of a plat which was invalid upon the face of the record.

Defendant Van Wieren built his house after the circuit court rendered its decision in *Westveer v. Ainsworth, supra.* The opinion therein indicated the lot owners had rights in the park lands. The decree of the circuit court as it affects the defendant Remenga is even more justifiable. Plaintiffs' bill of complaint was filed May 27, 1937. Remenga purchased his land and built his gasoline station in 1938. He acted at his peril while the litigation was pending involving the question of whether or not he could acquire title. His land was included in that covered by the petition in *Westveer v. Ainsworth, supra,* and he must be charged with notice of the decision in that case. *McQuade v. Wilcox,* 215 Mich. 302 (16 A. L. R. 997). The building in which the defendant Kilcare, Incorporated, operates a beer tavern

was constructed as an adjunct to the hotel formerly on the premises prior to the latter's destruction by fire in 1923. It was used as a storage garage by the lot owners for many years thereafter, and in 1934 defendant corporation purchased it and remodeled it into a beer tavern at a cost of about $5,000. Because of the nature of the building and its location upon the premises, it cannot be said the defendant Kilcare, Incorporated, was bound to take notice of the decisions of the two prior cases. We do not hold that this beer tavern is necessary to the use of the lands dedicated for park purposes, but the lot owners appear not to have offered any objection to the remodeling and operation of the tavern. In the hotel formerly upon the premises, there was a bar and public dances took place in the hotel. Neither was objected to. The lot owners having stood by and allowed Kilcare, Incorporated, to spend approximately $5,000 in the improvement of the building which was erected upon the premises in connection with the hotel formerly there, we think there is just ground for holding they are estopped from questioning the right of the corporation to continue its maintenance. *McKee* v. *City of Grand Rapids,* 137 Mich. 200. The plat of 1892 was invalid. It confers no rights on defendants and cannot affect the legal rights of plaintiffs.

No appeal was taken from the decision of the circuit court insofar as its decree affected Hazel Tracy Eggleston. Her rights under this decree are not referred to in the assignments of error nor mentioned in the argument.

Decree of the trial court will be modified as to defendant Kilcare, Incorporated, as above indicated, but otherwise affirmed, with costs to defendant Kil-

care, Incorporated, and with costs to plaintiffs against the other defendants.

BUSHNELL, SHARPE, CHANDLER, NORTH, and MC-ALLISTER, JJ., concurred with POTTER, J.

WIEST, J. (*dissenting*). I am of the opinion the decree should be reversed and the bill dismissed.

The county never accepted the park, nor has it by any act adopted it. The county is not a party to the suit and, so far as the record discloses, has no interest in the litigation. Plaintiffs may not now disturb what they have, without protest, permitted by their inaction for upward of 40 years. It is inequitable and unjust to grant them the relief awarded in this case. Defendants were something more than squatters; they acted in the belief that they had good title, and their good faith and probable grounds for entertaining the view that they had title brings this case, so far as plaintiffs are individually concerned, within the rule that, having slept on their now asserted rights for so many years, it is too late to have ouster at this late date.

Defendants should have costs.

BUTZEL, C. J., concurred with WIEST, J.