Markman, J.
(dissenting). I respectfully dissent. The exclusive way to “vacate, correct, or revise a recorded plat or any part of a recorded plat” is to file a lawsuit pursuant to the procedures of the Land Division Act (LDA), MCL 560.101 et seq. MCL 560.222; Martin v Beldean, 469 Mich 541, 542-543; 677 NW2d 312 (2004). This rule is compelled by the explicit language of the LDA, and was explicitly recognized in Martin. Even the majority appears to acknowledge this rule. Yet, disregarding the core purpose of the LDA — to “ ensure [] that plats on file remain accurate,” Martin, 469 Mich at 551 *122 n 24 — the majority holds that plaintiffs, who filed an action to quiet title based on adverse possession, were not required to proceed with an action under the LDA because they sought to establish a substantive property right that was neither “traceable to the plat” nor to “the platting process,” even though now that plaintiffs have prevailed in this action, a recorded plat will necessarily have been “vacated, corrected, or revised.” By undermining the protections established by the LDA for persons who purchase property in reliance on the representations made in a plat, the majority introduces uncertainty and instability into Michigan property law. Under the majority’s interpretation, Michigan plats are destined, over time, to become certainly, and increasingly, more inaccurate, defeating the fundamental purpose of the act. I would require that plaintiffs proceed with their action under the LDA, but allow them to amend their complaint and add all necessary parties.
I. STANDARD OF REVIEW
A trial court’s ruling on a motion for summary disposition presents an issue of law that is reviewed de novo on appeal. Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp, 486 Mich 311, 317; 783 NW2d 695 (2010). The interpretation of statutes also constitutes a question of law that this Court reviews de novo on appeal. Eggleston v Bio-Med Applications of Detroit, Inc, 468 Mich 29, 32; 658 NW2d 139 (2003).
II. ANALYSIS
A. BACKGROUND
The purpose of the LDA, as suggested by its title, is “to regulate the division of land” and also to “further the orderly layout and use of land,” “provide for proper *123 ingress and egress to lots and parcels,” “promote proper surveying and monumenting of land subdivided and conveyed by accurate legal descriptions,” and “establish the procedure for vacating, correcting, and revising plats.” Title of 1967 PA 288. In pursuit of these objectives, real property information is compiled on a plat that is recorded with the local municipality. See MCL 560.131 to 560.198. A plat consists of “a map or chart of a subdivision of land,” MCL 560.102(a), and the LDA requires that the plat
contain sufficient information to completely define, for the purpose of a resurvey, the location of any boundary, corner or angle point within the plat. All land lying within the boundaries of the plat shall be shown thereon in such a manner that title to the area may be clearly established as to whether dedicated to public use or reserved to private use. [MCL 560.135.]
A plat in Michigan is more than a mere map. Rather, it communicates the existence of property rights that are derived from the plat itself. In Kirchen v Remenga, 291 Mich 94, 109; 288 NW 344 (1939), this Court explained:
“Where land is represented on a map or plat as a park, public square, or common, the purchasers of adjoining lots acquire as appurtenant thereto a vested right to have the space so designated kept open for the purpose and to the full extent which the designation imports. The sale and conveyance of lots according to such plat implies a covenant that the land so designated shall never be appropriated by the owner or his successors in interest to any use inconsistent with that represented on the original map. And the purchaser of an adjoining lot acquires such an easement in the park or public square in front of it as entitles him to proceed in equity to prevent by injunction the appropriation of the park or square to any use other than that designated on the map or plat by reference to which he purchased his lot; he is not a mere volunteer *124 seeking to enforce the rights of the public; he has a special interest of his own to protect.” [Citation omitted.]
Likewise, in Little v Hirschman, 469 Mich 553, 564; 677 NW2d 319 (2004), a unanimous opinion of this Court, we held that it is well established by our caselaw that “dedications of land for private use in plats before [the LDA] took effect convey at least an irrevocable easement in the dedicated land.” Indeed, “a private dedication is effective upon the sale of a lot because it is reasonably assumed that the value of that lot, as enhanced by the dedication, is reflected in the sale price. That is, purchasers [have] relied upon the dedications that made the property more desirable.” Id. at 559.
In addition to our caselaw interpreting rights derivable from the plat, the Legislature has granted property rights to individuals solely on the basis of the plat. MCL 560.253(1) states that
[w]hen a plat is certified, signed, acknowledged and recorded as prescribed in this act, every dedication, gift or grant to the public or any person, society or corporation marked or noted as such on the plat shall be deemed sufficient conveyance to vest the fee simple of all parcels of land so marked and noted, and shall be considered a general warranty against the donors, their heirs and assigns to the donees for their use for the purposes therein expressed and no other.
Therefore, under this provision of the LDA, if a plat is duly recorded, a property right is effectively created. That property right consists of a fee simple interest in “every dedication, gift or grant. . . marked or noted as such on the plat,” to be used for “the purposes expressed therein and no other.” Id.; see also Martin, 469 Mich at 549 n 19 (recognizing the fact that “purchasers of parcels of property conveyed with reference to a *125 recorded plat have the right to rely on the plat reference and are presumed to ‘accept’ the benefits and any liabilities that may be associated with the private dedication”). Thus, as our caselaw and statutes make plain, a plat is more than merely a map because it conveys property rights to the purchasers of platted property. With this background, we examine whether plaintiffs, who ultimately seek to have North, East, and Cross Streets struck from the Harford Village plat, should have been required to file their claim pursuant to the procedures of the LDA.
B. LAND DIVISION ACT
The primary goal of statutory interpretation is “to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute.” G C Timmis & Co v Guardian Alarm, Co, 468 Mich 416, 420; 662 NW2d 710 (2003). If statutory language is clear, we presume that the Legislature intended the meaning expressed. Id. If the statute does not define a word, we may consult a dictionary to determine the plain and ordinary meaning of the word. People v Morey, 461 Mich 325, 330; 603 NW2d 250 (1999).
MCL 560.222 provides:
Except as provided in [MCL 560.222a], to vacate, correct, or revise a recorded plat or any part of a recorded plat, a complaint shall be filed in the circuit court by the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which the subdivision covered by the plat is located. [Emphasis added.]
As recognized in Martin, the LDA provides the “exclusive” procedure “to vacate, correct, or revise” a recorded plat or any part of a recorded plat. Martin, 469 Mich at 542-543. The LDA does not define the terms “to *126 vacate,” “to correct,” or “to revise.” Therefore, we may consult a dictionary to determine the plain and ordinary meaning of these terms. “To vacate” means “to render inoperative”; “to correct” means “to set or make right; remove the errors or faults from”; and “to revise” means “to alter (something written or printed), in order to correct, improve, or update[.]” Random House Webster’s College Dictionary (1997). These definitions make evident that plaintiffs’ cause of action in this case seeks to “vacate,” “correct,” and “revise” part of the Harford Village plat.[1]
First, plaintiffs sought to “vacate” part of the plat because they desired “to render inoperative” the areas platted as North, East, and Cross Streets. Pursuant to its property rights derived from the dedication in the plat, Lima Township claims that it is entitled to use these streets. According to the township, a successful adverse-possession action by plaintiffs would render the township’s use rights under the plat inoperative, and it is obviously correct in this assertion. Through the operation of adverse possession, plaintiffs are attempt *127 ing to extinguish all other interests in the property, including any easement interest of the township. That is, a successful adverse-possession claim would vest plaintiffs with title to the disputed property, Gorte v Dep’t of Transp, 202 Mich App 161, 168; 507 NW2d 797 (1993), and would afford them “ ‘the right to defend the possession, and to protect the property against the trespass of others,’ ” Zabowski v Loerch, 255 Mich 125, 128; 237 NW 386 (1931) (citation omitted). The majority recognizes this fact and states that “the judicial decree quieting title in plaintiffs settled any ownership claims of the township . . . .” Ante at 107 (emphasis added). Thus, when the trial court quieted title to the disputed streets in plaintiffs, they acquired a right to defend their possession and to protect the property against the trespass of the township and all others. Plaintiffs thereafter had a fee simple interest in the platted streets, unencumbered by any remaining interest of the township. By quieting title in plaintiffs, the “part of the plat” that granted the township an easement in the depicted streets was rendered null and void, and therefore “vacated.”
Second, plaintiffs sought “to correct” the plat because they desired “to set or make right” the plat to conform to the actual use of the platted streets. Plaintiffs’ quiet-title action sought judicial recognition that they are the exclusive owners of the disputed streets and that their ownership interest is unencumbered by the township’s easement. A declaration of exclusive ownership thus “correct[ed]” the township’s claimed interest in the plat.
Third, plaintiffs sought to “revise” the plat because they desired “to alter [the plat] in order to correct, improve, or update” it to reflect the nonexistence of the *128 township’s easement in the platted streets.[2] The majority again agrees that the plat has been altered, and therefore “revise[d],” when it asserts that a “consequence of plaintiffs’ successful quiet title action [was to] alter[] substantive rights created by the dedication of land in a recorded plat. .. .” Ante at 118. Accordingly, because plaintiffs’ quiet-title action sought to “vacate, correct, or revise” the Harford Village plat (indeed to do all three), plaintiffs should have been required to file their claim pursuant to the LDA. Once again, the LDA provides the exclusive procedure “to vacate, correct, or revise a dedication in a recorded plat.” Martin, 469 Mich at 542-543.[3]
*129 C. LDA AND ACCURACY OF PLATS
This interpretation is consistent with the underlying purposes of, and protections afforded by, the LDA. Specifically, the LDA requires a plaintiff seeking to “vacate, correct, or revise a recorded plat or any part of a recorded plat,” MCL 560.222, to (a) set forth the “part or parts, if any sought to be vacated and any other correction or revision of the plat sought” and “[t]he plaintiffs reasons for seeking the vacation, correction, or revision,” MCL 560.223; (b) serve with process an extensive group of parties who have a potential interest in the platted property, MCL 560.224a; and (c) if the plaintiffs action is successful, prepare “either a new plat of the part of the subdivision affected by the judgment or a new plat of the entire subdivision if the court’s judgment affects a major part of the subdivision,” MCL 560.229(1). These procedures ensure that every party with an interest or right in the platted property is brought before the court.[4] As this Court stated in Martin:
Allowing this action to proceed as one to quiet title is contrary to the statutes, which not only outline the specific procedures to be followed and what must be pleaded, but also require that an extensive group of parties be served, including everyone owning property located within three *130 hundred feet of the lands described in the petition, the municipality, the State Treasurer, the drain commissioner, the county road commissioners, affected public utilities, and in certain instances, the directors of the Department of Transportation and the Department of Natural Resources. [Martin, 469 Mich at 550-551.]
The Court further stated:
Requiring lawsuits seeking to correct, alter, or amend a plat to be filed only pursuant to MCL 560.221 through 560.229 ensures that plats on file remain accurate. The reason is that MCL 560.229 requires that a plaintiff who obtains a court order to vacate, correct, or amend a plat must obtain a new plat and have it filed with the State Treasurer. In this way, the plats on file remain accurate. [Id. at 551 n 24.]
Martin thus recognized that purchasers of property have a right to rely on a plat as an accurate reflection of the property rights received through their purchase. Ensuring that plats on file remain accurate protects those purchasers who have rightfully relied on plats as evidence of property rights received through their purchase.[5] The rule adopted today by the majority contravenes this core purpose of the LDA by permitting, indeed incentivizing, the increasing inaccuracy of recorded plats. The majority agrees that a principal rationale for requiring a lawsuit under the LDA that seeks to “vacate, correct, or revise a recorded plat” is to ensure that plats remain accurate. Yet, at the same time, it recognizes that “the practical effect of [its] analysis is to render the plat inaccurate.” Ante at 120 n *131 61; see also ante at 111 (stating that “the plat accurately reflected the underlying substantive property rights until the change in ownership rights was established by plaintiffs’ adverse possession action”) (emphasis altered). How can the majority’s rule reflect the better interpretation of the LDA where, as the majority itself recognizes, its rule undermines the central purpose of the act? How can its rule reflect a consistent interpretation of the LDA where, as the majority further recognizes, its rule contradicts Martin, in which we stated unanimously that “[requiring lawsuits seeking to correct, alter, or amend a plat to be filed only pursuant to [the LDA] ensures that plats on file remain accurate”? Martin, 469 Mich at 551 n 24. And how can the majority’s rule reflect a reasonable interpretation of the LDA and fundamental Michigan property law where, as the majority again recognizes, its rule will ensure, over time, that recorded plats become certainly and increasingly inaccurate?
The majority reasons that all this is acceptable because the LDA grants other persons, such as the township, the right to file a complaint to correct erroneous plats. However, the fact that the Legislature may have afforded other persons standing to file a claim to “vacate, correct, or revise” a plat does not ensure that such persons will see fit to actually file such a claim. Plats will indeed remain accurate if they do choose to file, but will become increasingly inaccurate if they do not, or if they file in a dilatory manner. This legal regime stands in contrast to that established by the LDA, under which plats will always remain accurate, without relying on the fortuitousness of what “other” persons do.[6] Requiring plaintiffs to file their claim *132 pursuant to the LDA ensures that the plat remains accurate because the Legislature has also mandated that if a plaintiff succeeds in such an action, “the court shall also direct plaintiff to prepare ... a new plat. . . MCL 560.229. In this way, the “plats on file remain accurate.” Martin, 469 Mich at 551 n 24. The fact that “other” persons may have standing to file, based on their private interests, is not the equivalent of persons being required to comply with a law designed to ensure that a particular public interest is upheld — namely, a public interest in accurate recorded plats.
The majority’s decision effectively allows private litigants to alter plats, with no assurance that any of the persons who must be informed of this under the LDA will be apprised of such changes in the plat, be made aware of possibly antagonistic property interests, or be enabled to assert and defend their property rights. Allowing plaintiffs to dispense with the procedures of the LDA, including notice to the municipality and other governmental entities, also undermines the ability of local governments to rely on plats for these same purposes.
D. CASELAW
Requiring plaintiffs to file their quiet-title action pursuant to the LDA would be consistent with the *133 guidance of Martin, and with Hall v Hanson, 255 Mich App 271; 664 NW2d 796 (2003), a case that is on all fours. In Martin, the plaintiffs purchased a parcel of property that was one of 21 platted parcels in the Tan Lake Shores Subdivision plat. The plaintiffs also purchased the northerly part of an adjoining outlot referred to as outlot A. When the plaintiffs applied for a permit to build a home on their parcel and a portion of outlot A, they learned that the plat had dedicated outlot A for the use of all lot owners in the subdivision. The plaintiffs filed a quiet-title action to have the plat language “ ‘[o]utlot A is reserved for the use of the lot owners’ ” declared null and void. Martin, 469 Mich at 544-545. The trial court granted the plaintiffs the requested relief in an order stating that the plaintiffs “shall hereinafter have the exclusive right and use of the portion of Outlot A....” Id. at 545 nil. This Court reversed. First, we held that the LDA clearly authorizes private dedications and that the dedication in the Tan Lake Shores Subdivision plat that outlot A “ ‘is reserved for the use of lot owners’ ” constituted a private dedication that conveyed a fee simple to the purchasers of lots in the plat. Id. at 549 (citation omitted). Second, we held that the plaintiffs, “who ultimately were seeking to have the plat conveyance of outlot A declared ‘null and void,’ ” were “required to file their claim under [the LDA].” Id. at 550. In addition to the rationales discussed earlier, we reasoned that allowing the plaintiffs’ action to proceed as one to quiet title rather than pursuant to the LDA deprived parties or interested persons of “ ‘substantial right[s] or privilege[s].’ ” Id. at 551-552 (citation omitted). Specifically, we stated:
MCL 560.224a requires that certain fellow lot owners and affected utilities, as well as numerous governmental officials, to be made parties to a lawsuit to vacate, correct, or revise a plat. Here several of these necessary parties *134 were not joined in the lawsuit and it is clear that they have a statutory right to participate fully in the lawsuit. [Id. at 552.]
There is no relevant difference between this case and Martin. The Harford Village plat’s dedication language states that the plat shall be used “for the uses and purposes therein contained.” Therefore, according to the Harford Village plat, North Street, East Street, and Cross Street were to be used as streets. Although these streets were never developed, by platting them, the purchasers of the platted property obtained “at least an irrevocable easement in the dedicated land.” Little, 469 Mich at 564. See also Martin, 469 Mich at 548 n 18 (stating that “[a]s we explained] in Little, a private dedication made before [the LDA] took effect conveyed an irrevocable easement, whereas MCL 560.253[1] now indicates that a private dedication conveys a fee interest”). Thus, all purchasers of lots in the Harford Village plat had a right to rely on the dedications contained in the plat itself, each of which presumably affected (for the better) the value of their property.
In their quiet-title action, plaintiffs, just as the plaintiffs in Martin, sought, although not explicitly, to have a plat conveyance declared “null and void.” That is, through their quiet-title action, plaintiffs sought to extinguish the irrevocable easement in North Street, East Street, and Cross Street that the plat conveyed to purchasers of lots in the Harford Village plat. Now that plaintiffs have succeeded in this, purchasers will no longer be capable of using the streets for the purposes for which they were granted, and any rights that are incident to the reasonable and proper enjoyment of the easement will also be extinguished. These facts are indistinguishable from those of Martin, in which the plaintiffs sought to exclude other purchasers of lots in *135 the platted property from using a portion of outlot A. Plaintiffs in the instant case also sought to exclude other purchasers of lots in the platted property from exercising their rights in the platted streets. Thus, as this Court held in Martin, plaintiffs, who ultimately sought to have the plat conveyance of North Street, East Street, and Cross Street declared “null and void,” should have been required to file their claim pursuant to the LDA.
As the majority correctly points out, unlike the plaintiffs in Martin, plaintiffs did not “expressly” seek to alter a recorded plat. But the majority’s reasoning that Martin is distinguishable on this basis is troublesome and misdirected. Allowing plaintiffs to nullify the protections, and to undermine the purposes, of the LDA solely because their pleadings did not “expressly” request that the Harford Village plat be altered elevates form over substance and incentivizes artful pleading and gamesmanship in an area of law — the law of real property — in which there should be little tolerance for such conduct.
Plaintiffs’ complaint in this case sought the following relief:
A decree that title to the land... is owned by the Plaintiff[s],. .. free and clear of any right, title, claim, or interests of the Defendants.
The only potential “right, title, claim, or interest” that the township has in the undeveloped, but platted, streets is derived from the plat itself. Plaintiffs were not, as the majority claims, merely seeking judicial recognition of title to protect their lands, but were seeking recognition that usage rights derived from the plat were no longer in existence and could no longer be relied upon by the township. According to the majority, plaintiffs should be relieved from the imperative of *136 filing their claim under the LDA because they did not incant the magic words “plat,” “vacate,” “correct,” or “revise” in their prayer for relief. Apparently, if plaintiffs’ complaint had sought a decree that title to the land was held by plaintiffs, and that the township’s interest in the property pursuant to the plat must be “vacated,” they would have been required to file their claim under the LDA.
However, there is no meaningful difference between such a hypothetical complaint and plaintiffs’ actual complaint, which requested that title be vested in them “free and clear of any right, title, claim, or interests” of the township. The certainty and stability of property rights in this state, and compliance with the Legislature’s mandate, should not be allowed to rest upon so flimsy, and irrelevant, a distinction, one that effectively allows the plaintiffs themselves to determine the application of one of the foundational property laws of our state and the extent to which the property rights of other persons will be protected. The majority’s distinction not only erodes the protections of the LDA, but is in tension with Michigan’s fact-pleading system, which only requires a complaint to contain a statement of the facts and the allegations reasonably necessary to inform the adverse party of the nature of the claims against that party. See MCR 2.111(B).
[It is a] well-established principle that Michigan courts are “not bound by a party’s choice of label for its action [because this would] put form over substance....” Instead, as we [have] explained ..., “the gravamen of plaintiffs action is determined by considering the entire claim.” [O’Neal v St John Hosp & Med Ctr, 487 Mich 485, 527; 791 NW2d 853 (2010) (Markman, J., concurring in the result only) (citation omitted; second alteration in original).]
*137 Whether a plaintiff labels a claim as an action to quiet title or an action to “vacate, correct, or revise a recorded plat” cannot be allowed to control whether the action is, in fact, treated as a traditional action to quiet title or as an action to “vacate, correct, or revise a recorded plat.”
This established principle ensures that the governing law, and not the label the parties attach to that law, controls the outcome of an action. As the United States Supreme Court has observed, any other approach would allow a party to avoid the requirements of a legislative mandate simply by artful pleading. See Allis-Chalmers Corp v Lueck, 471 US 202, 211; 105 S Ct 1904; 85 L Ed 2d 206 (1985). [Id.][7]
Quieting title to the disputed streets in plaintiffs established plaintiffs as the sole owners of the property, to the exclusion of all others in the platted area. See *138 Lawson v Bishop, 212 Mich 691, 699; 180 NW 596 (1920) (noting that when title is established by adverse possession, the “rights of all others claiming any interest in the land have been extinguished”). This was done outside the confines of the LDA, which requires that an extensive group of parties be served and afforded an opportunity to participate in the litigation, including everyone owning property located within 300 feet, utility companies, the municipality, and others.[8] As a result, the fundamental purpose of the LDA, that “plats on file remain accurate,” has been circumvented. Martin, 469 Mich at 551 n 24. We did not permit this in Martin, and we should not permit it in this case. Martin properly compels the conclusion that plaintiffs were required to file their action pursuant to the LDA because that act constitutes “the exclusive means available when seeking to vacate, correct, or revise a dedication in a recorded plat. ...” Id. at 542-543.[9]
*139 Requiring plaintiffs’ lawsuit to be filed in accordance with the LDA would also be consistent with Hall v Hanson. In Hall, the plaintiffs brought suit, claiming that the defendants had interfered with their right to use a publicly platted boulevard. The defendants counterclaimed, “seeking, among other things, to quiet title to the disputed property in themselves and to enjoin plaintiffs from doing anything other than accessing the surface of the lake for reasonable activities.” Hall, 255 Mich App at 274. As in this case, the plaintiffs argued in the trial court that the defendants’ quiet-title action was improper because the exclusive way to “vacate, correct, or revise” the plat was through an action under the LDA. Id. at 278-279. Nevertheless, the trial court quieted title to the disputed boulevard in the defendants. The Court of Appeals reversed and held that, because the defendants “sought to vacate or otherwise alter the plats dedicating the boulevard to the public, they should have brought their [counterclaim] pursuant to the LDA.” Id. at 286. The instant case is essentially indistinguishable from Hall.[10] Plaintiffs, as with the defendants in Hall, sought to quiet title to the *140 disputed streets free and clear of any claim of right or interests that the township had pursuant to the Harford Village plat, and the outcome here should be no different.[11] Because plaintiffs for all practical purposes sought to vacate or otherwise alter the plat, they should have been required to bring their compliant under the LDA.[12]
*141 III. HARMONIZATION OF STATUTES
The majority asserts that there is a relevant distinction for purposes of compliance with the LDA between quieting title by adverse possession in a manner that would alter a plat and requesting the alteration of that plat.[13] As a result, because plaintiffs here only sought to do the former, they were relieved of any obligations under the LDA. The majority is, of course, correct that our law recognizes a distinction between actions to quiet title, MCL 600.2932, and actions to “vacate, correct, or revise a recorded plat,” MCL 560.222. But what the majority fails to acknowledge is that, while under ordinary circumstances these actions serve different purposes and do not impinge on one another, under somewhat less ordinary circumstances, the actions overlap and do impinge on one another, as in this case, in which a quiet-title action has directly and necessarily altered a plat. This overlap, or tension, will *142 not arise in every quiet-title action, and it will not arise in every adverse-possession action, but it has arisen in this case. Under these specific circumstances, the quiet-title action must be brought under the auspices of the LDA because, necessarily and indisputably, if successful, it will cause a recorded plat to be “vacated, corrected, or revised,” and the “exclusive” means of doing so is through the LDA.[14]
Because the majority sees no tension between these statutes — the majority views it as of little moment whether a plaintiff avails himself of the quiet-title statute or the LDA — it engages in no effort to harmonize these statutes. On the other hand, because I believe that there is tension between these statutes under the instant circumstances, and because I believe that it is of considerable moment — in terms of the procedural rights of affected persons, the public interest in accurate platting, and regard for the Legislature’s intentions in enacting the LDA — an effort to harmonize these statutes is required, in my judgment, and such harmonization compels the conclusion that plaintiffs must file under the LDA.
First, it is axiomatic that the more specific statute prevails over the more general. Jones v Enertel, Inc, 467 Mich 266, 270-271; 650 NW2d 334 (2002). “[T]o determine which provision is truly more specific and, hence, controlling, we consider which provision applies to the more narrow realm of circumstances, and which to the *143 more broad realm.” Miller v Allstate Ins Co, 481 Mich 601, 613; 751 NW2d 463 (2008). The quiet-title statute provides that “[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff. .. .” MCL 600.2932(1). This statute, which applies to any person claiming any interest in property, seemingly applies to plaintiffs’ action seeking to establish title to the land free and clear of the township’s interest. On the other hand, MCL 560.222 provides the exclusive means available to “vacate, correct, or revise a recorded plat or any part of a recorded plat....” This statute is applicable only to a much smaller subset of property actions. Thus, because MCL 600.2932 applies to all property actions and MCL 560.222 applies only to a limited subset of property actions, it would seem that the latter, the more specific provision, would tend to control.
Second, there are relatively few quiet-title actions under MCL 600.2932 that also seek to “vacate, correct, or revise” a plat, while nearly all actions that seek to “vacate, correct, or revise” under MCL 560.222 also seek to quiet title. See, e.g., Martin, supra-, Hall, supra. That is, actions to quiet title are rarely accompanied by a claim to “vacate, correct, or revise,” while actions to “vacate, correct, or revise” are often accompanied by a claim to quiet title. Not only does this suggest that the more efficient means of proceeding in cases in which these claims coexist would be through an LDA action, but it underscores that the likely legislative intention when these statutes overlapped was that the more specific statute would control. If, after all, in a relatively high proportion of “vacate, correct, or revise” cases there would exist an alternative quiet-title action, it *144 would seem that this would create a reasonably high likelihood that the Legislature’s intention to render plats increasingly accurate over time through the LDA could well be undermined. By contrast, there would be a relatively small proportion of quiet-title cases in which there would be the alternative of a “vacate, correct, or revise” action, and therefore a reasonably small likelihood that the LDA could interfere in any significant way with the Legislature’s intentions in enacting the quiet-title statute.
Third, the potential harm that might arise if plaintiffs proceeded with their cause of action pursuant to the LDA, rather than in an action to quiet title, is inconsequential in comparison with the harm that might arise if plaintiffs proceeded with their cause of action as one to quiet title. Specifically, if plaintiffs proceed with their quiet-title action under the LDA, the only apparent harm is that a greater burden would be placed on plaintiffs to apprise persons with a potential interest in litigation of the pendency of such litigation. By contrast, the potential harm of not bringing an action to “vacate, correct, or revise” under the LDA is that persons with a potential property interest in ongoing litigation would not be apprised at all of such litigation and, as a result, would either be prejudiced in later asserting their interests or compelled to file new lawsuits, or that later property transactions would be thrown into confusion as a result of inaccurate plats and affected persons compelled to file new lawsuits. Of these respective harms, I believe that the latter is far more potentially injurious to the integrity of the law, which again argues in favor of resolving the tension between these statutes in favor of compliance with the LDA.
Finally, although the Legislature has provided plaintiffs with two avenues to assert their interests in the *145 disputed property, the “doctrine of last enactment” also supports the position that plaintiffs’ quiet-title action must yield to the mandate that an action seeking to “vacate, correct, or revise” a plat be brought under the LDA.
That doctrine presumes that the Legislature is aware of the existence of the law in effect at the time of its enactments and recognizes that, since one Legislature cannot bind the power of its successor, existing statutory language cannot be a bar to further exceptions set forth in subsequent, substantive enactments. [Pittsfield Charter Twp v Washtenaw Co, 468 Mich 702, 713; 664 NW2d 193 (2003).]
Section 222 of the LDA was substantially altered in 1978 to state that a party seeking to “vacate, correct, or revise” a recorded plat “shall” file a complaint pursuant to the LDA. MCL 560.222, as amended by 1978 PA 367. On the other hand, MCL 600.2932 has not been substantively altered since its enactment in 1961. Compare 1961 PA 236, § 2932 and MCL 600.2932, as amended by 1964 PA 8. The fact that the LDA is the most recent statement of the Legislature again argues in favor of compliance with the requirements of the LDA.
IV FURTHER RESPONSE TO MAJORITY
A. ESTABLISHING TITLE IN LDA ACTIONS
The majority concludes that in this case establishing title is a necessary prerequisite to the alteration of the plat. I agree.[15] If the plat had been simply altered without a judicial decree that plaintiffs were the true *146 owners of the property, the LDA would have served as the vehicle to “establish an otherwise nonexistent property right,” which would be contrary to our holding in Tomecek v Bavas, 482 Mich 484, 496; 759 NW2d 178 (2008) (“The LDA was never intended to enable a court to establish an otherwise nonexistent property right.”).[16] But that does not mean that plaintiffs should be relieved from filing their cause of action pursuant to the LDA. MCL 560.223 requires the plaintiff in an LDA action to set forth the “reasons for seeking the vacation, correction, or revision” of a plat, which in this case would obviously be that the plaintiff acquired an interest in the platted property by adverse possession.[17] The trial court would then proceed with the case as with any other adverse-possession action, and the plaintiff would be required to show “clear and cogent proof of possession that [has been] actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statu *147 tory period of 15 years, hostile and under color of claim of right.” Burns v Foster, 348 Mich 8, 14; 81 NW2d 386 (1957). If the plaintiff is able to meet this burden of proof, the trial court would then “vacate, correct, or revise all or a part of a recorded plat,” as provided in sections 222 to 229 of the LDA. MCL 560.221. In this way, persons who purchase property in reliance on the representations made in a plat, as well as future purchasers of platted property, are protected by the requirements of the LDA, and the plat remains accurate because a new plat must then be prepared in whole or part. MCL 560.229(1).[18]
Indeed, the majority itself sees “no reason why plaintiffs could not have addressed both the adverse possession claim and the LDA claim in bifurcated proceedings ... in which the court would have first addressed the quiet title claim and then, if necessary, resolved any issues regarding the plat[.]” Ante at 119. However, it simply believes that “there is nothing in the LDA that requires a litigant to proceed in that manner.” Ante at 119-120. To me, what compels a litigant to proceed in that manner is, equally simply, that the LDA constitutes the exclusive manner by which to “vacate, correct, or revise” a plat. The township’s easement is a “part of the plat,” and when that interest is altered — or in this case entirely terminated — outside the scope of the LDA, the mandate that actions seeking to “vacate, correct, or revise” must be undertaken in a particular *148 manner is disregarded. Although plaintiffs could establish title in a quiet-title action, if the LDA and the quiet-title statutes are to be harmonized, plaintiffs must file such an action under the LDA. If nothing requires a litigant to proceed in that manner, and if a litigant can proceed in a piecemeal fashion by bringing only a quiet-title action, and then — and only if he so chooses — a subsequent action to alter the plat under the LDA, then why did this Court reverse in Martin, in which the plaintiffs proceeded in the identical manner now deemed acceptable by the majority? Our analysis in that case answers this question, and it merits reiteration:
Allowing this action to proceed as one to quiet title is contrary to the statutes, which not only outline the specific procedures to be followed and what must be pleaded, but also require that an extensive group of parties be served, including everyone owning property located within three hundred feet of the lands described in the petition, the municipality, the State Treasurer, the drain commissioner, the county road commissioners, affected public utilities, and, in certain instances, the directors of the Department of Transportation and the Department of Natural Resources. [Martin, 469 Mich at 550-551 (emphasis added).]
B. MARTIN v BELDEAN
The majority errs in its understanding of Martin v Beldean, both factually and legally. As already discussed, Martin held that a plaintiff “seeking to vacate, correct, or revise a dedication in a recorded plat” must file a lawsuit pursuant to the LDA. Martin, 469 Mich at 542-543. This precedent is now made the subject of hypertechnical distinctions that have no grounding in either the LDA or in Martin itself. Given the importance of Martin to this case, the majority’s analysis warrants further response.
*149 The majority states that this dissent “incorrectly concludes that Martin requires plaintiffs in the instant case to file under the LDA,” because
the Martin plaintiffs had a preexisting substantive property right — reflected in the plat and documented by a deed — in the plat whose language they sought to have declared void. Thus, the issue in Martin concerned whether the plat’s language accurately reflected the parties’ preexisting rights as outlined in the plat itself. Furthermore, the relief sought by the Martin plaintiffs’ quiet title action was to conform the plat at issue to those preexisting property rights. [Ante at 112-113.]
The majority’s points are straightforward, but its asserted distinctions fail. First, the Martin plaintiffs did not have a “preexisting substantive property right.. . reflected in the plat,” because the plat reflected only that the disputed property, outlot A, was “ ‘reserved for the use of the lot owners.’ ” Martin, 469 Mich at 545. Thus, contrary to the majority’s assertion, the plat granted absolutely no rights to the plaintiffs in outlot A, but instead, just as the plat in this case, granted use rights to someone other than the plaintiffs.[19] In Martin, the plat granted use rights to the other 21 lot owners; in this case, the plat granted use rights to assorted other persons, including the township. Thus, the Martin plaintiffs had no preexisting substantive property right reflected in the plat.
Second, just as in Martin, plaintiffs here “had a preexisting substantive property right” — the right of title which passed upon the expiration of the statutory period of limitation — “in the plat whose language they sought to have declared void.” The majority might *150 better explain why the Martin plaintiffs, whose claimed title to the disputed property was established by a deed, were required to bring their quiet-title action pursuant to the LDA while plaintiffs in this case, whose title to the disputed streets was established by adverse possession, are not.[20] Any putative distinction based on the method of acquiring title lacks statutory support and suggests, without any apparent basis in the law, that title acquired by deed constitutes a legally superior method of acquiring title for purposes of an LDA action. In any event, plaintiffs here did acquire title to the disputed streets by deed. The trial court found that North and East Streets were included in a deed to General William G. Beach (plaintiffs’ predecessor) in 1853, and that Cross Street was included in a deed to the Beach family in 1897. Accordingly, even under the majority’s interpretation of Martin, because plaintiffs did have a “preexisting substantive property right. . . in the plat whose language they sought to have declared void,” they are required to file their action pursuant to the LDA.
Third, the majority repeatedly emphasizes that the Martin plaintiffs’ deed “preexisted” the filing of the plat. This purported distinction is again without merit *151 for two reasons: (1) MCL 560.222 contains no requirement that only claims based on property rights that “predated” or “preexisted” the filing of a plat must be brought under the LDA and (2) Martin itself did not rely on this distinction, or even allude to it, in holding that the plaintiffs’ action had to be filed under the LDA. Presumably, this is because the Martin plaintiffs and their predecessors received a deed to outlot A after the subdivision was platted, not before, as asserted by the majority. See Martin v Redmond, 248 Mich App 59, 61; 638 NW2d 142 (2001).
Fourth, the majority states that because the plaintiffs had a preexisting property right reflected in the plat whose language they sought to have declared void, the issue in Martin concerned “whether the plat’s language accurately reflected the parties’ preexisting rights as outlined in the plat itself,” ante at 113. Again, I disagree. The Martin plaintiffs did not claim that the plat’s dedication of outlot A was in error[21] — that is, they did not claim that the plat inaccurately dedicated outlot A for the use of all owners in the subdivision because that would have been inconsistent with their deed. Instead, the plaintiffs in Martin only claimed that the dedication had expired pursuant to the terms of the plat itself, which limited all restrictions, conditions, covenants, and rights to 25 years; by laches or estoppel, as the trial court had held; or because the dedication was invalid, as the Court of Appeals had held. See Martin, 248 Mich App at 62-63. This Court then addressed only the following issues: (1) the Court of Appeals’ holding that a private dedication in a recorded plat is invalid under Michigan law, and (2) whether the plaintiffs, who ulti *152 mately sought to have the plat conveyance of outlot A declared “null and void,” were required to file their claim under the LDA. Martin, 469 Mich at 542-543. From all of this, it seems clear that the issue in Martin was not, as the majority claims, whether the plat language “accurately” reflected the “parties preexisting rights as outlined in the plat itself,” but only whether the dedication was valid in the first place and, if it was, whether plaintiffs could alter that dedication outside the confines of the LDA. Nothing in Martin concerned the “accuracy” or “scope” of existing rights under a recorded plat, and thus the majority’s purported distinctions are inapt.
Fifth, the majority states that “the relief sought by the Martin plaintiffs’ quiet title action was to conform the plat at issue to those preexisting property rights.” Ante at 113 (emphasis added). I fail to see how the Martin plaintiffs, who filed suit to declare their interest obtained by deed superior to the interests of those who claimed an interest in the property as a result of the plat’s dedication language, sought to “conform the plat at issue,” but plaintiffs here did not. Did not both sets of plaintiffs file suit to quiet title to establish their respective preexisting titles as superior to those who claimed an interest in the property stemming from the plat’s dedication language? Did not both sets of plaintiffs file suit to declare “null and void” that very dedication language? Yet according to the majority, only the Martin plaintiffs sought to “conform” the plat to their preexisting property rights. The distinctions are invisible.
Sixth, under the majority’s holding, if a party is only required to file a cause of action pursuant to the LDA “ [i]f [his] interest in land is traceable to the plat or the platting process,” ante at 117, then it must follow that Martin, a recent and unanimous decision of this Court, *153 was wrongly decided. As already noted, the Martin plaintiffs’ interest in the platted property arose from a deed conveyed after the property was platted. Their interest was neither “traceable to the plat” nor to “the platting process.” Consequently, under the majority’s holding, our decision in Martin, requiring the plaintiffs’ quiet-title action to proceed under the LDA, was in error because the LDA could not have provided the necessary relief. Yet the majority does not overrule Martin. This leads to the second practical question arising from the majority’s opinion, in addition to how plats are to remain as accurate depictions of the realities of property boundaries in Michigan: If the majority cannot reconcile its holding in this case with the Court’s holding in Martin, how are the bench and bar to comprehend the nuances of difference apparently recognizable to the majority that justify the disparate treatment of these cases? The majority leaves in place alternative, and incompatible, formulations of the law, each of which will be invoked as convenient by different plaintiffs, defendants, and judges.
In the final analysis, the majority, in attempting to justify its holding that plaintiffs are not required to file their claims under the LDA, deeply misunderstands Martin, both factually and legally. The Martin plaintiffs had neither a “preexisting substantive property right. . . reflected in the plat” nor a deed that “preexisted” the filing of the plat, and their case did not concern the “accuracy” or “scope” of the plat at issue. In addition, the Martin plaintiffs’ interest in the land was not “traceable to the plat or the platting process,” as now required by the majority in order for the LDA to apply. What the Martin plaintiffs did have was a deed that reflected their interest in the property, and they did seek to “conform the plat at issue” to that deed, but, as discussed, those are similarities rather than differ *154 enees. Thus, just as in Martin, “plaintiffs, in seeking to vacate, correct, or revise the plat, [are] required to file their lawsuit under the Land Division Act.” Martin, 469 Mich at 552.[22]
C. THRESHOLD QUESTION
According to the majority, the “basic disagreement” between our respective analyses is that this dissent views LDA and quiet-title actions as sometimes “overlap [ping]” and in tension with each other, and thus concludes that it is necessary to harmonize the relevant statutes, while the majority views those actions as separate and distinct, and thus concludes that it is unnecessary to harmonize. Ante at 119 n 57. However, the disagreement between our opinions is even simpler and more fundamental, in my judgment. The question is simply whether plaintiffs’ quiet-title action seeks to “vacate, correct, or revise a recorded plat or any part of a recorded plat.” If answered in the affirmative, plaintiffs must file this action pursuant to the LDA, and only then would the statutes have to be harmonized. If answered in the negative, plaintiffs may proceed with their action as one to quiet title only, without the need to comply with the LDA. Thus, the critical question once again is whether this particular quiet-title action *155 seeks to “vacate, correct, or revise a recorded plat or any part of a recorded plat.”
On this note, it is worth reflecting again on the majority’s approach to answering this question. According to the majority, plaintiffs only seek to establish a substantive interest in property and are unconcerned with “vacat[ing], correcting], or revising] the plat.” This analysis is straightforward, but straightforwardly wrong. A plaintiffs subjective and self-characterized interest cannot be the determining factor in assessing whether an action seeks to “vacate, correct, or revise a recorded plat or any part of a recorded plat,” for, as discussed, other persons may also have affected property interests in the plat, and the fundamental premise of the LDA is that each of these is entitled to be heard in actions “vacating], correcting], or revising] the plat.” Each is entitled to notice, to participate fully in the lawsuit, and to have his or her interests accurately depicted on the plat. By focusing exclusively upon a plaintiffs subjective and self-characterized interests, the majority: (1) fails to take other persons, and other interests, into account, as required by the LDA, (2) fails to adhere to the express language of the LDA, which requires that an LDA action be undertaken whenever the “vacation], correction], or revision]” of a plat is sought — not merely when it has been stated that it is sought — and instead substitutes its own “crucial limitation,” limiting the LDA to cases in which the plaintiff has a property interest “traceable to the plat or the platting process,” and (3) substantially undermines the LDA as a means for ensuring the accuracy of plats in this state.
V. CONCLUSION
The Land Division Act mandates that the exclusive way to “vacate, correct, or revise a recorded plat or any *156 part of a recorded plat” is to file a lawsuit pursuant to the LDA. In this case, plaintiffs’ quiet-title action necessarily sought to “vacate, correct, or revise” the Harford Village plat, and thus plaintiffs should have been required to bring their cause of action pursuant to the LDA. In my judgment, if plaintiffs wish to proceed under the LDA, they should be allowed to amend their complaint and to add all necessary parties. The majority’s contrary interpretation undermines the primary purpose of the LDA, which is to ensure that plats on file remain accurate. The majority’s holding will introduce greater uncertainty and instability into this state’s property law, while incentivizing artful pleadings and gamesmanship. Under the law of this case, Michigan plats are destined over time to become increasingly more inaccurate and increasingly less reflective of actual property interests in this state. Accordingly, I respectfiilly dissent and would reverse the judgment of the Court of Appeals.
Cavanagh, J., concurred with Markman, J.

 MCL 560.222 provides that an LDA action is appropriate if the action seeks to “vacate, correct, or revise” a recorded plat. But rather than analyzing plaintiffs’ action in regard to these words that the Legislature actually used, the majority prefers to analyze plaintiffs’ action in terms of whether their property interest is “traceable to the plat or the platting process,” which according to the majority constitutes a “crucial limitation” on actions that seek to “vacate, correct, or revise” a plat. Ante at 116-117. However, it is unclear where this newly identified “crucial limitation” comes from, given that neither the LDA nor caselaw sets forth any such “limitation” on actions that seek to “vacate, correct, or revise” a plat. See MCL 560.221 through 550.229 and part IV(B) of this opinion (observing that the plaintiffs in Martin lacked any interest that was “traceable to the plat or the platting process,” and thus failed to satisfy the majority’s new “crucial limitation” on LDA actions). By introducing a new generalization into the law, one having no apparent foundation within the actual law itself, the majority subtly but unmistakably transforms the law.

 Notwithstanding the foregoing, the majority concludes that plaintiffs’ quiet-title action does not seek to “vacate, correct, or revise” the plat because their action merely sought a judicial determination of title, and not alteration of the plat. But this is an incomplete analysis. What plaintiffs, in fact, sought in addition to a judicial declaration of title was that the title be free and clear of any interests that the township had in the property. Thus, when title was granted in this action, and the township’s easement extinguished, the property interests underlying the plat, which granted the township an easement, were ineluctably altered. A plat that did not reflect this alteration would he inaccurate.

 Although the instant quiet-title action should have been brought pursuant to the LDA, that is not to say that every action that seeks to quiet title to property through adverse possession must proceed under the LDA. As we stated in Martin,
if a party merely wants to maintain the status quo, e.g., to he declared an owner or someone with use rights under a plat, such party would not be seeking to vacate, correct, or revise the plat and thus would not he limited to filing a lawsuit pursuant to the LDA. [Martin, 469 Mich at 550 n 21.]
Thus, if an adverse possessor merely sought in an adverse-possession action to be substituted for an owner of a parcel of platted property without affecting the plat’s boundary lines, which are to be shown on the plat “in such a manner that title to the area may he clearly established,” MCL 560.135, that party would not be required to comply with the procedures of the LDA because it would he maintaining the “status quo” of the plat. It would not he “vacating, correcting, or revising” the plat. If, *129 on the other hand, as here, the adverse possessor sought to alter the boundary lines of platted property, that party would be required to comply with the procedures of the LDA because that action would alter the “status quo” of the plat.

 One amicus curiae, the Department of Energy, Labor and Economic Growth (now the Department of Licensing and Regulatory Affairs), for example, observes, that it is statutorily obligated as the successor of the State Treasurer to review plats to ensure that the requirements of the LDA are satisfied. MCL 560.151. Requiring that it he joined in an action that seeks to “vacate, correct, or revise a recorded plat” enables it to perform these statutory obligations.

 Moreover, as three amici curiae (the Michigan Municipal League, the Michigan Township Association, and the State Bar’s Public Corporation Law Section) point out, purchasers of platted property are hardly the only ones who rely on the accuracy of plats. Local governments, in particular, also rely on plats for zoning, infrastructure, utility placement, liability, and property taxation purposes.

 The Legislature actively sought to ensure that plats on file remain, and become increasingly more, accurate over time by amending MCL *132 560.222 to require parties seeking to “vacate, correct, or revise a plat or any part of a recorded plat” to fde their claim pursuant to the LDA. As originally enacted, MCL 560.222 was permissive in nature and stated that to “vacate, correct, alter or revise a recorded plat or any part of it. ... [a party] may apply to the appropriate circuit court.” See 1967 PA 288, § 222(2) (emphasis added). However, in 1978, § 222 was amended to mandate that a party seeking to “vacate, correct, or revise a recorded plat or any part of a recorded plat” “shall” file a complaint in the circuit court. MCL 560.222, as amended by 1978 PA 367 (emphasis added). This mandatory directive remains in the current version of MCL 560.222.

 The majority rejects the claim that its opinion invites artful pleading or gamesmanship by asserting that “[pllaintiffs in this case merely pleaded what they sought to accomplish, which was to establish a substantive interest in property on the basis of adverse possession.” Ante at 119. By sanctioning a rule that enables plaintiffs’ pleadings to determine whether the requirements of the LDA must be satisfied, the majority incentivizes plaintiffs to obscure what may be the necessary consequences of their claims in order to avoid the requirements of the LDA. It cannot be overemphasized that the premise of the LDA is that interests other than those of the plaintiff must be taken into account in the legal process as a prelude to a plat being rendered inaccurate. It is the sum of such private interests, including but not limited to that of the plaintiff, that conduces to define the public interest that informs the LDA. It should not be viewed as surprising that at least some plaintiffs might prefer to introduce as few competing private interests into the legal process as possible in defining their own property rights, and they have now been afforded the opportunity by the majority to avoid the imperatives of the LDA through artful pleadings and gamesmanship. The plaintiffs in Martin also simply pleaded what they “sought to accomplish” — a quiet-title action declaring themselves to be the sole owners of outlot A — but, somehow, this Court was able in that case to look beyond such pleadings, and to what the plaintiffs “sought to accomplish,” in concluding that “[a]llowing this action to proceed as one to quiet title is contrary to the [LDA] ....” Martin, 469 Mich at 550.

 “Others” that must be joined include what is now the Department of Licensing and Regulatory Affairs (as the successor to the State Treasurer), the drain commissioner, and the chairperson of the board of county road commissioners. In addition, depending on the nature of the plat to be “vacate[d], corrected], or revise[d],” MCL 560.221, MCL 560.224a requires that additional parties be joined. For example, if the proposed change includes or borders a state highway or federal aid road the director of the state transportation department and the director of the Department of Natural Resources must be joined, MCL 560.224a(f); and if the proposed change involves a lake or stream, the Department of Natural Resources must be joined, MCL 560.224a(g).

 The majority concludes that in contrast to Martin, “plaintiffs’ successful quiet title action leaves the plat unchanged, but inaccurate.” Ante at 113. Perhaps this would be better stated as “unchanged, and therefore inaccurate.” That the plat remains “unchanged, but inaccurate” following plaintiffs’ successful quiet-title action is precisely the reason that they should be required to file their action under the LDA. The LDA provides a statutory scheme to ensure that all persons with a potential interest in a plat are allowed to participate in any action to vacate, correct, or revise it. Allowing a plat that was accurate on Monday to become inaccurate on Wednesday after a quiet-title decision on Tuesday, *139 in the absence of all parties who are entitled to assert their contrary claims or competing interests, is simply incompatible with the Legislature’s design in the LDA. Moreover, once again, there is no meaningful distinction between this case and Martin. If in Martin this Court had affirmed the quieting of title in the plaintiffs, the plat, under the majority’s reasoning, would also have remained “unchanged, but inaccurate.”

 Despite citing Hall as instructive authority, the majority distinguishes Hall on the grounds that
[t]he defendants in Hall did not claim an interest in the street by virtue of adverse possession or on any other basis independent of the plat. Rather, the defendants’ claimed interest in the street at issue was directly traceable to and arose from the plat and the platting process. If the street were vacated — that is, if a court determined that the plaintiffs had failed to accept the dedication or abandoned the street — the defendants would, by operation of law, *140 own the vacated portions of the street because, as reflected in the plat, they were abutting landowners. [Ante at 113-114 n 45 (emphasis omitted).]
It is, of course, true that the specific property interest asserted by the defendants in Hall was not identical to the specific property interest asserted by plaintiffs in this case, but that is a distinction of no relevance. What is relevant is that Hall illustrated one means by which the terms “vacate,” “correct,” and “revise” could be implicated in a property claim in which the plaintiffs did not explicitly assert an interest in “vacating,” “correcting,” or “revising” a plat. Surely, Hall’s proposition that courts addressing property claims will look to the true nature of what a party is seeking, and to the real impact thereof, was not limited to the specific details of the asserted interest in that case. Instead, a reasonable interpretation of the LDA would have the Hall rule encompass any action that had the necessary effect of “vacating,” “correcting,” or “revising” a plat. The majority distinguishes Hall on the grounds that the grass on the property in question is fescue rather than bluegrass.

 The majority attempts to distinguish Martin and Hall because unlike the factual situations in those cases, “plaintiffs’ interest [here] in the disputed property did not depend on the plat, the plat’s dedication language, or whether the township abandoned the streets.” Ante at 117. But again, this distinction is meaningless. Although the issue in those cases may have concerned the claimants’ interests in platted property, MCL 560.222 does not limit its application to cases that pertain to platted property; instead, it applies to actions that seek to “vacate, correct, or revise a recorded plat or any part of a recorded plat.” The fact that plaintiffs’ interest in the disputed property does not arise from the plat is irrelevant; the important thing is that, as a result of legal action, the plat would he “vacated,” “corrected,” or “revised.” Moreover, the township’s property interest does arise from the plat, and it is entitled to the protections of the LDA.

 While holding that the defendants’ action was required to be brought pursuant to the LDA, Hall also decided that it was unnecessary to *141 remand for additional proceedings under the LDA because the bench trial was “full and fair.” Hall, 255 Mich App at 286; see also Binkley v Asire, 335 Mich 89; 55 NW2d 742 (1952). Although I have no doubt that defendants in this case received both a “full and fair” trial, I would not fashion the same remedy. While such a remedy may have been appropriate in Hall because all necessary lot owners, as well as numerous governmental officials, had been joined as parties, here by contrast, a number of necessary parties under the LDA were absent. In my judgment, plaintiffs should be allowed to amend their complaint, and to add all necessary parties. See Martin, 469 Mich at 552.

 The majority refers to Olsen v Grand Beach, 282 Mich 364; 276 NW 481 (1937), and Howard v Berrien Springs, 311 Mich 567; 19 NW2d 101 (1945), for this proposition, but those cases have little relevance to the instant case. While both acknowledge that title to platted property may be established by adverse possession — an entirely unremarkable proposition — neither purported to answer whether plaintiffs must bring an adverse-possession claim pursuant to the LDA. Further, those cases were decided before the 1978 amendment of MCL 560.222 that made compliance with the LDA mandatory for actions seeking to “vacate, correct, or revise a plat.”

 Martin recognized this point when it remanded the plaintiffs’ quiet-title action to the trial court to proceed under the LDA. If Martin had followed the majority’s approach here, it would have fashioned the same remedy as the majority: an affirmance of the trial court’s grant of title to the plaintiffs, but a nullification of that portion of the trial court’s order revising the plat. But Martin did not do this, and instead held that the plaintiffs’ quiet-title action was required to be brought under the LDA.

 In supposing that this dissent would hold that “an LDA action [is] a prerequisite to establishing an adverse possession claim,” ante at 111 n 39, the majority misapprehends this dissent. The argument here is not that an LDA action is a prerequisite to the establishment of an adverse-possession claim, but only that, when an adverse-possession claim overlaps an action to “vacate, correct, or revise a plat,” the former must *146 be brought within the LDA in order to ensure that the protections afforded by the LDA inure to the benefit of persons whom the statute was intended to protect.

 Although I continue to believe that Tomecek was correct that an LDA action seeking to “vacate, correct, or revise a recorded plat” does not enable a court to establish an otherwise nonexistent property right, Justice Cavanagh, who joins this opinion, does not. See Tomecek, 482 Mich at 499 (Cavanagh, J., concurring in part and dissenting in part). However, neither of our positions in Tomecek is inconsistent with the position asserted in this dissent.

 Contrary to the majority’s position, the doctrine of standing would not bar an adverse possessor from proceeding in this manner, even one who was not already the owner of a platted lot. MCL 560.222 provides that a complaint may be filed by “the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which the subdivision covered by the plat is located.” Because title vests automatically in the adverse possessor upon expiration of the period of limitations, Gardner v Gardner, 257 Mich 172, 176; 241 NW 179 (1932), the adverse possessor would be an “owner of a lot in a subdivision” and thus would have standing to file a complaint under MCL 560.222.

 Requiring plaintiffs to proceed in this manner does not run afoul of Tomecek. because the LDA is not being used here to create substantive property rights. Rather, the doctrine of adverse possession itself created these rights, which passed to plaintiffs upon the expiration of the requisite period of limitations. Gardner, 257 Mich at 176. Thus, the LDA does not serve as a vehicle to create substantive property rights, hut only serves as the “tool to validate property rights that already existD.” Tomecek, 482 Mich at 496 (opinion by Kelly, J.).

 In fact, it was not until the plaintiffs applied for a permit to build on outlot A that they learned that it had been dedicated for the use of the other lot owners. Martin, 469 Mich at 544-545.

 In this regard, the majority states that “plaintiffs had no recognized, recorded, preexisting property rights in the disputed land,” ante at 113, but I fail to understand the relevance of this distinction for two reasons. First, the majority cites no authority for the suggestion that a plaintiff must have some type of “recognized” and “recorded,” “preexisting” property right in the disputed land. MCL 560.222 contains no such requirement. Second, plaintiffs do have a “recognized” property right. As even the majority acknowledges, expiration of the period of limitations vests title in the party claiming adverse possession, Gardner, 257 Mich at 176, and, further, plaintiffs also have deeds that reflect their property rights in the disputed streets. Thus, plaintiffs do have a “recognized recorded preexisting property right[] in the disputed land,” as now required by the majority for the LDA to be applicable.

 Nor could they have, as the owner at the time of the plat’s dedication, specifically signed the dedications and restrictions that depicted outlot A as among those reserved for the use of all lot owners.

 Notwithstanding the foregoing analysis, the majority maintains that the “factual and legal differences that distinguish the instant matter from Martin compel the result of this case.” Ante at 116 n 53. Never mind that the supposed “factual differences” are nonexistent — the Martin plaintiffs did not have a preexisting property right reflected in the plat, they did not have a deed that preexisted the filing of the plat, and their case did not concern the accuracy or scope of the plat — both bench and har are now left utterly without guidance as to how supposed “factual and legal differences” in future cases should be understood in characterizing these as either Martin or Beach cases. The majority’s legacy here is to leave property law murkier and increasingly subject to judicial discretion and arbitrariness.